James Givens, Appellant, *v.* Henry Van Studdiford, Respondent.

November 27, 1877.

1. Where the owner knowingly permits a brothel to be established and maintained in his house, which adjoins a tenement of another, by reason of which the latter's tenants leave, and his property is depreciated in value, the former is liable to the latter for the special damage thereby caused him, over and above the wrong and injury done to the general public.

2. In such a case the measure of damages is the difference in the selling value of the property and the loss of rent occasioned by such nuisance.

3. In ascertaining these facts, all circumstances that would show a depreciation in value should be considered, and the damage recovered must be the actual depreciation shown to be caused by the existence of the nuisance.

4. Where it is shown that, after defendant's house was occupied as a brothel, other houses of the same character were opened in the same neighborhood, so that the damage caused by others cannot be separated from that caused by defendant, he will be liable for all such damage, if the natural and probable consequence of his illegal act was to cause the injury complained of.

5. It is error to give an instruction where there is no evidence in the case upon which to base it, though it be abstractly correct.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

W. G. RAINEY, for appellant: Damages may be recovered for keeping or creating a nuisance. —*Gleason* v. *Guy*, 4 Conn. 418 ; *Call* v. *Buttrick*, 4 Cush. 345 ; *Scott* v. *Bay*, 3 Md. 431 ; *Hodges* v. *Hodges*, 5 Metc. 205 ; *Ray* v. *Sellers*, 1 Duv. 254 ; *Pillsbury* v. *Moore*, 44 Me. 154 ; 30 Ala. 318 ; 12 N. Y. 486. The rule of damages is the injury actually sustained at the commencement of the suit. — 1 Hill. on Torts, 602, sec. 16 ; Field on Dam., secs. 45, 74, 734, 748 ; *Allison* v. *Chandler*, 11 Mich. 442 ; *Illinois Central R. Co.* v. *Grabill*, 50 Ill. 241 ; *Ottoway Gas-light Co.* v. *Graham*, 28 Ill. 77 ; *Scott* v. *Bay*, 3 Mo. 432. See these cases. *McKeon* v. *Lee*, 4 Robt: 450. Where several parties contribute in causing the damages, and the damages cannot be separated, each is liable for the whole damages. — *Boyd* v. *Watt*, Sup. Ct. Ohio, 3 Cent. L. J. 756 ; *Stone* v. *Dickerson*, 5 Allen, 29 ; *Colgrove* v. *New York & New Hampshire R. Co.*, 20 N. Y. 492.

H. A. HAEUSSLER, for respondent: "Where property, at the demise, is not a nuisance, and becomes so only by the act of the tenant while in his possession, and injury happen during such possession, the owner is not liable." — *Owings* v. *Jones*, 9 Md. 108 ; *Pickard* v. *Collins*, 23 Barb. 444 ; *Hillard* v. *Richardson*, 3 Gray, 349 ; *Earle* v. *Hall*,

2 Metc. 353; *Scammon* v. *Chicago*, 25 Ill. 424. "The owner is not responsible for enabling the tenant to commit a nuisance if he pleases." — 1 Add. on Torts, 197, 198; *Durant* v. *Palmer*, 27 N. J. L. 544; *Beavers* v. *Trimmer et al.*, 25 N. J. L. 97. Where the vicinity has already lost its character by reason of other nuisances, plaintiff cannot recover. — *Gilbert* v. *Showerman*, 23 Mich. 448; 1 Add. on Torts, 257, 258; 5 Metc. 8; *Rich* v. *Basherfield*, 56 C. B. 783–805.

BAKEWELL, J., delivered the opinion of the court.

This is an action for damages against defendant for permitting a nuisance to be established and maintained on the premises of defendant, adjoining those of plaintiff, by which the value of plaintiff's property, consisting of a valuable residence, was permanently injured, and the rents which would otherwise have been received from the same were lost. The particular nuisance complained of is that the house of defendant was, with his knowledge, and consent, rented to prostitutes, who conducted themselves in an indecent manner, in the house, in full view of the neighborhood. The damages are laid at $25,000. The answer is a general denial. There was a verdict and judgment for defendant; and plaintiff appeals.

The testimony of plaintiff's witnesses was to the effect, that plaintiff purchased, in 1867, a house on Walnut Street, near Sixth Street, in St. Louis; that defendant owned a house on Sixth Street, immediately adjoining; that defendant's house was rented to prostitutes, in 1872; that plaintiff's tenants complained of the nuisance, and that plaintiff notified defendant of the nuisance, and asked him to abate it, which was not done; that the women in defendant's house indecently exposed themselves at the windows; that, since 1872, the house could be rented to no decent family; that, since the date of the commencement of the nuisance, the neighborhood is of bad fame, and many

houses in the neighborhood are occupied by prostitutes; that the value of plaintiff's property has depreciated, from the character of the neighborhood, and from the general depreciation in value of real estate throughout the city since the commercial panic of 1873. One witness, a real-estate agent, swore that defendant's house was the first property in the neighborhood rented to prostitutes. It appeared that plaintiff bought the house in 1869, for $29,000, at trustee's sale; that he leased it to a railroad company, for five years, the term expiring in January, 1873, a month after which they moved out. After that, it was vacant for a year; was then rented for eighteen months, at about $2,000; and has since been vacant, except that plaintiff has occupied a room there, because he could not rent it to any decent tenant. On December 4, 1875, it was sold for $20,000, under a mortgage given by plaintiff for that amount; and at the date of the trial, was held by plaintiff as lessee, for a term of six months, at a monthly rent of $150, with the privilege of purchasing, at the expiration of the term, for $24,657 and interest. The rental value of the property, at the date of the trial, was $1,800 a year. The defendant introduced no testimony.

At the close of plaintiff's case, defendant asked an instruction in the nature of a demurrer to the evidence, which was refused; and this action of the court was excepted to by defendant.

We do not think that the trial court erred in refusing to take the case from the jury. There was evidence tending to show that a nuisance existed on the premises of defendant, immediately adjoining and in full view of the house owned by plaintiff; and that defendant had notice of its existence, and had failed to remove the same; and that it occasioned special damage to plaintiff. It is true that the evidence also tended to show that the depreciation in value of the plaintiff's property was attributable, in part, to other causes, such as a general depreciation in values, for

which plaintiff was in nowise responsible. It was, however, for the jury to determine, from the evidence, under proper directions from the court, what special damage, if any, was caused to plaintiff by the nuisance of which he complains. It is claimed by counsel for defendant that the injury so far arose from the negligence of plaintiff himself that he might, by ordinary care and exertion, have avoided the injury. That would be a good defence if shown; but it was for defendant to show it. It does not appear from any thing in the testimony introduced by plaintiff.

At the instance of plaintiff, the court gave instructions to the effect that the keeping of a bawdy-house is a nuisance, for which damages may be recovered by one suffering a private injury therefrom; that these damages may be recovered from the landlord who rents his property for such a purpose, or knowingly allows it to be so used; that the fact that other houses in the neighborhood were used for the same purpose does not justify defendant in renting his house for purposes of prostitution; and that, if defendant allowed his house to be so used, he is liable to plaintiff for all damages caused to plaintiff's property by that circumstance; and that the measure of damages is the difference between the value of plaintiff's property if defendant's property had not been used as a house of ill fame, and the value of plaintiff's property as depreciated by such use of defendant's house; and that, in ascertaining that fact and assessing damages, the circumstances which might show a depreciation in value should be considered.

At the instance of defendant, the court instructed the jury, first, that if the plaintiff's interest in the property was worthless at the time of bringing suit, they should find for the defendant, unless such condition of the property was in some degree brought about by the acts of the defendant; second, that plaintiff could not recover unless defendant either rented his house for a bawdy-house, or knew that

it was so used, and consented to such acts of his tenants as made the premises a nuisance; third, that, to recover, plaintiff must prove that defendant's house was used as a bawdy-house with defendant's knowledge, and that plaintiff was injured by the nuisance on defendant's premises, and not by the fact that other houses in the neighborhood were used in like manner; and that plaintiff could recover in this suit only for such damages as were caused alone by the nuisance on defendant's premises; fourth, that if, during the time plaintiff and defendant owned adjoining property, the neighborhood was bad, and defendant did not knowingly rent his house for, or permit it to be used as, a bawdy-house, and neither house could be rented advantageously except to bawds, and that any loss to plaintiff was caused by the general decline in value of the property, or by the character of the neighborhood, and not by the mere fact of the improper acts of defendant's tenants, then plaintiff cannot recover.

Instructions as to the measure of damages, asked by plaintiff, were refused. It is not necessary to set them out for the purposes of this opinion.

A bawdy-house is a public nuisance *per se*, and a proper subject for a public prosecution, wherever situated. It may also become a private nuisance, and whatever may have been formerly held as to no private action lying for a public nuisance, it is now well settled that such an action may lie. And it is unquestionable that, if a brothel is kept adjoining the tenement of another, by reason of which his tenants leave, and his property is depreciated in value, he may maintain an action for the special damage which is sustained by him over and above the wrong and injury done to the general public. *Hamilton* v. *Whitridge*, 12 Md. 128. In such a case a fair means of arriving at the actual damage would be to ascertain the loss of rent and depreciation of the value of property caused by the nuisance. That is, how much less the property would sell for on account of the

existence of the nuisance, and what rent has been lost from the same cause. But, in ascertaining these facts, all circumstances that would show a depreciation in value should be considered. *Illinois Central R. Co.* v. *Grabill*, 50 Ill. 241. And the damage recovered must be the actual depreciation shown to be caused by the existence of the nuisance. Where property is changing its character, and what has been formerly a good residence neighborhood is invaded by business establishments which destroy its quiet, it is a matter of common observation that it passes through a period in which it is neither good for business of the better class nor for residences; and drinking-saloons, and other establishments more or less objectionable or disreputable, settle down, for a time, in what were once the residences of wealthy citizens. When a bawdy-house is opened in such a neighborhood it may be very difficult to say how much any depreciation of value is attributable to that fact alone. But if it be shown that, after the defendant's house was occupied as a bawdy-house, other disreputable houses of the same character sprung up in the neighborhood, the mere fact that it may be impossible to say how much of the damage was occasioned by the nuisance on defendant's premises, and how much by the other brothels, will be no bar to recovery. For if it is impossible to separate the damages caused by others from those caused by defendant, he is liable for all such damages, if the natural and probable consequence of his illegal act was to cause the injury complained of. The fact that another person contributed, either before defendant's interposition or concurrently with it, in producing such damage, is no defence. Whart. on Neg., sec. 144. So, in a recent case in Ohio (*Boyd* v. *Watt*, 27 Ohio St. 259; 3 Cent. L. J. 756), where, under a statute of that State, one was sued for damages for selling liquor to another, whereby he became a habitual drunkard, it was held that it was no defence that others had sold the deceased liquor too; and it was further held that any one who contributed

to the result by illegal sales to the deceased might be held liable for the whole damage, where the damages could not be separated.

"If the defendant," says the court, "was using the means calculated to produce the injury, the law presumes he intended to produce it. If others, with or without concert, were concurrently coöperating with him, using like means, they were acting under the same common design ; and if injury resulted, each is liable, though each was acting without the knowledge of what the other was doing. Such is the uniform rule in this class of cases."

It is manifest from what has been said that this case was given to the jury on a totally wrong theory of the law, and that the second, third, and fourth instructions for defendant should have been refused. These instructions are further objectionable because they tell the jury that defendant is not liable for a nuisance created and maintained solely by his tenants, without his knowledge and consent, and, in this respect, are not warranted by the evidence. Plaintiff swears that he told defendant of the existence of the nuisance in 1872, and his testimony in this respect is not contradicted.

The judgment of the Circuit Court is, therefore, reversed and the cause remanded. All the judges concur.