## BLAGEN *v.* SMITH.

[44 L. R. A. 522, 56 Pac. 292.]

1. APPEAL—CONSIDERATION OF IMMATERIAL TESTIMONY.—Testimony introduced on an immaterial matter not in issue cannot be considered on appeal in an equity case tried *de novo*, although no exception was taken to its admission.

2. NUISANCE—JURISDICTION OF EQUITY.—Equity has jurisdiction to restrain existing or threatened public nuisances by injunction, at the suit of a private person who suffers therefrom a special and peculiar injury distinct from that suffered by him in common with the public at large. Hill's Ann. Laws, § 333, providing a remedy at law for a private nuisance by an action for damages and an order to abate the nuisance, is not exclusive, where immediate relief is demanded: *Fleischner* v. *Citizens' Investment Co.*, 25 Or. 119, cited.

3. INJUNCTION—BAWDY HOUSE.—A house of ill fame is a public nuisance, wherever it may be situated, and its continuance may be enjoined by any one who can show a special injury.*

4. IDEM.—Equity will enjoin the leasing of houses for brothels when they are so situated with reference to complainant's business property that the occupants of the latter are subjected to disgraceful sights and sounds, for the owner in such a case suffers a special injury in the enjoyment of his property.*

From Multnomah: LOYAL B. STEARNS, Judge.

This is a suit by private parties to enjoin the continuance of a public nuisance. The transcript shows that the plaintiff, N. J. Blagen, is the owner of two lots at the southeast corner of Couch and First Streets, in the City of Portland, upon which he erected a large four-story brick building in 1890, expending in the purchase of the land, and the improvement thereof, about $80,000; that upon the completion of this building it was leased to the plaintiff, The W. C. Noon Bag Company, a corporation, which is engaged in the manufacture of bags, tents, awnings, and sails, employing from forty to sixty men and women; that the other plaintiffs own or are in possession of certain real property having stores, warehouses, or factories erected thereon, and all situated in the immediate vicinity of Blagen's said building; that defendant, R. C. Smith, having leased two lots diagonally across Couch Street from Blagen's building, and two lots at the southwest and two at the southeast corners of the intersection of Davis and First Streets, changed thereon various small wooden buildings into what are known as "cribs," for the purpose of renting them to dissolute women, to be used as bawdy houses. The plaintiffs substantially allege that if defendant leases these cribs, to be used for the purpose for which they were designed, it will depreciate the value of their property, render it less desirable for rent, and result in a private, special, and

---

*NOTE—For a case somewhat similar to this see *Naef* v. *Palmer*, 41 L. R. A. 219.

The case of *Haggart* v. *Stehlin*, 22 L. R. A. 577, is an interesting discussion of the right to enjoin the maintenance of a saloon in a residence district.

REPORTER.

direct injury to them.   The plaintiff, The W. C. Noon Bag Company, avers that from the windows in the Blagen building said cribs are in plain view; that its employees, in coming to and returning from their labor, must necessarily pass by or between these buildings, which, if they are permitted to be used for immoral purposes, will bring to the vicinity in which they are situated drunken, disorderly, and disreputable persons and criminals, the effect of which will be to endanger the lives and morals of its employees, and interfere with, disturb, and injure its business, resulting in a private, direct, and special damage to it.   Whereupon plaintiffs prayed that a temporary injunction might be issued, restraining the defendant from proceeding further in the construction or repair of any building upon the said premises for the purposes of prostitution, from renting any of said cribs, or allowing any persons to occupy the same, for that purpose, and from transferring or selling said buildings to any person to be used for immoral purposes, and that upon the final hearing said injunction be made perpetual.

The defendant, after denying the material averments of the complaint, alleges, in substance, that he had expended in repairing said buildings the sum of $5,000, and that the only manner in which he could be reimbursed for the outlay, and for the rent which he had agreed to pay for the use of the premises, was by subletting these houses, not for immoral purposes, but to any person who might wish to rent them; that they are cheap, and desirable only to a class of people who would be liable to want to live in that part of the city, which, by reason of its contiguity to the wharves on the Willamette River, and the liability of that stream to overflow its banks, would never be occupied as residence property, except by the poorest class of people, who are compelled by necessity

to seek cheap rents; that in June, 1894, the backwater from said river stood six feet deep over all said property, since which time none of it had been desirable for any purpose; that said section of the city is remote from public travel, without retail stores, and that ladies have no occasion to visit it, and never have gone into that neighborhood. The reply put in issue the allegations of new matter contained in the answer.

A trial was had, and from the evidence taken thereat the court found the facts, in substance, as above given, and also that five or six Japanese prostitutes had moved into some of these buildings since this suit was commenced, notwithstanding a temporary injunction restraining defendant from leasing them to such persons had been issued and served, and that the proximity of these cribs to the property of said Blagen may somewhat depreciate its value; that the alterations made by defendant upon said buildings have not in any manner injured plaintiff's property, or been any damage to their business; and that, if these houses be rented and used for immoral purposes, neither of the plaintiffs will suffer any special or peculiar injury therefrom, different from that sustained by the community at large. The court also made the following findings: "Tenth. That long prior to January 1, 1897, there was situated directly across the street from said property of N. J. Blagen a house of prostitution kept by one 'Liverpool Liz,' and on the corner of First and C Streets, diagonally across the street, there was what was known as the 'Bella Union Theater,' a mixed saloon, where women resorted and sold liquors; that next to the building occupied by 'Liverpool Liz' there stood a sailor boarding house, kept by Jim Turk; that this part of town is known as part of Whitechapel District. Eleventh. That at the time of bringing this suit there were, and still are, situated

within two blocks of said property of N. J. Blagen fifteen saloons, and over twenty-eight houses of prostitution, called 'cribs,' and that said cribs or houses of prostitution and saloons have been standing on said property for several years prior to January 1, 1897.'' The court thereupon dissolved the temporary injunction and dismissed the suit, from which plaintiffs appeal.

REVERSED.

For appellants there was an oral argument by *Mr. George Henry Williams*, with a brief over the name of *Williams, Wood & Linthicum*.

For respondent there was an oral argument by *Mr. John M. Gearin*, with a brief over the names of *Hume & Hall* and *Gearin, Silvestone & Brodie*, to this effect:

This is simply a suit brought by a party considering himself aggrieved, and alleging that his property will be damaged by certain acts threatened to be done by the defendant, and asking for a restraining order.

The fact of a nuisance or no nuisance should be decided by a jury first: *Roseburg* v. *Abraham*, 8 Or. 509.

In order to obtain an injunction it must be shown that the injury complained of as present or impending, is such as, by reason of its gravity, or its permanent character, or both, cannot be adequately compensated in damages: 16 Am. & Eng. Enc. Law (1 ed.), p. 959; Wood, Nuisances, § 646; *Duncan* v. *Hayes*, 22 N. J. Eq. 27; *Fogg* v. *Nevada-California Oregon R. R. Co.*, 20 Nev. 429.

Injunctions against threatened nuisances will seldom be granted, except in extreme cases where the threatened use of property is clearly shown to be such as leaves no doubt of its injurious results. The bill must set forth such a state of facts as leaves no room for doubt upon

the question of nuisance, for if there is any doubt upon that point the benefit of it will be given to defendant: Wood, Nuisances, § 797;   High, Inj. 495, 496;   *Shaubut* v. *St. Paul & S. C. R. R. Co.*, 21 Minn. 502;   *Barnum* v. *Minnesota Transfer R. R. Co.*, 33 Minn. 365;   *Cleveland* v. *Citizens' Gaslight Co.*, 20 N. J. Eq. 206;   *Waupun Trustees* v. *Moore*, 34 Wis. 450 (17 Am. Rep. 446); *Zabriskie* v. *Jersey City & B. R. R. Co.*, 13 N. J. Eq. 314;   *Wolcott* v. *Melick*, 11 N. J. Eq. 204 (66 Am. Dec. 790);   *San Jose Ranch Co.* v. *Brooks*, 74 Cal. 465;   *McCowan* v. *Whitesides*, 31 Ind. 237;   *Hartshorn* v. *South Reading*, 3 Allen, 504;   *Clark* v. *Chicago & N. W. R. R. Co.*, 70 Wis. 597;   *Wesson* v. *Washburn Iron Co.*, 13 Allen, 101 (90 Am. Dec. 181);   *Proprietors of Quincy Canal* v. *Newcomb*, 7 Met. 283 (39 Am. Dec. 778); *Brainard* v. *Connecticut River R. R. Co.*, 7 Cush. 510;   *Stetson* v. *Faxon*, 19 Pick. 160 (31 Am. Dec. 123);   *Houck* v. *Wachter*, 34 Md. 272 (6 Am. Rep. 332);   *Marini* v. *Graham*, 67 Cal. 132.

MR. JUSTICE MOORE, after making the foregoing statement of facts, delivered the opinion of the court.

1.   It is contended by plaintiffs' counsel that the court erred in permitting defendant, over their objection, to introduce testimony outside the issues, and in making the findings thereon numbered respectively 10 and 11. Section 397, Hill's Ann. Laws, as amended by the act of the legislative assembly, approved February 20, 1893 (Laws, 1893, p. 26), in prescribing the manner in which findings shall be prepared in suits, reads as follows: "The court in rendering its decision shall set out in writing its findings of fact upon all the material issues of fact presented by the pleadings, together with its conclusions of law thereon, but such findings of fact and

conclusions of law shall be separate from the decree, and shall be filed with the clerk and incorporated in and constitute a part of the judgment roll of said cause; and such findings of fact shall have the same force and effect and be equally conclusive as the verdict of a jury in an action at law, except on appeal to the supreme court the cause shall be tried anew without reference to such findings." The transcript shows that counsel for defendant, on his cross-examination of W. C. Noon, referring to a period of two or three years prior to the commencement of the suit, propounded to him the following question: "Do you know, during that time, of such a place as the Bella Union Theater?" Whereupon the court, upon objection being made, said: "As to the injury of the property there, I think perhaps that would be admissible." The witness answered: "I think I have seen that on the door; yes." No exception to the ruling of the court upon the admission of this testimony was saved, nor can we find, from an inspection of the transcript, that any other objection was made or exception saved to the introduction of any of the testimony tending to support the findings complained of. This being so, and the cause coming before us for trial *de novo*, the question is presented whether, in the absence of any exception to the action of the court admitting testimony tending to show that houses of ill repute and other disreputable places of resort existed in the immediate vicinity of plaintiffs' property long before defendant constructed the cribs mentioned in the complaint, such testimony shall be considered on appeal, in view of the issues of fact to be tried. In *Newby* v. *Myers*, 44 Kan. 477 (24 Pac. 971), it is held that the findings of fact of a trial court must be based upon the issues made by the pleadings, and any finding outside such issues is a nullity. In *Marks* v. *Sayward*, 50 Cal. 57, it is held

that findings of fact must be within the issues; otherwise, they will not be regarded. In *Reinhart* v. *Lugo*, 75 Cal. 639 (18 Pac. 112), it is held that the finding in an action of partition contrary to an admission made by the pleadings as to the plaintiff's interest in the lands in question is outside the issue and erroneous, and a judgment based thereon should be reversed. In *Hall* v. *Arnott*, 80 Cal. 348 (22 Pac. 200), it is held that findings upon issues not properly presented by the pleadings must be disregarded. There is no issue in the pleadings upon which findings numbered 10 and 11 can be predicated, nor was any motion made to amend the answer in this respect; and, this being so, the testimony introduced upon that subject was immaterial, and cannot be considered on appeal.

It is admitted by plaintiff's counsel that the cribs constructed by defendant and leased for immoral purposes constitute a public nuisance, notwithstanding which they contend that their clients suffered a special injury therefrom, distinct and different in kind from that sustained by the general public, and that the court therefore erred in not making the injunction perpetual; while defendant's counsel maintain that plaintiffs had a complete, speedy and adequate remedy at law for the recovery of damages and the abatement of the nuisance, and hence a court of equity has no jurisdiction to grant the relief demanded, and that, such being the case, the decree should be affirmed.

2. The statute referred to as affording a legal remedy for the suppression of a nuisance substantially provides that any person whose property is affected by a private nuisance may maintain an action at law for damages therefor, and, if judgment be given for the plaintiff in such action, he may, in addition to the execution to en-

34 OR.—26.

force the same, on motion, have an order allowing a warrant to issue to the sheriff to abate such nuisance; and, if it appear on the hearing that such remedy is inadequate, the plaintiff may proceed in equity to have the defendant enjoined: Hill's Ann. Laws, § 333. It will be seen that the remedy thus provided can be invoked only by the person whose property, or right of possession and personal enjoyment thereof, is affected by the maintenance of a private nuisance, and, as an incident to the compensation which the law awards for the injury sustained, the court may order a warrant to be issued, commanding the sheriff to abate the same, but the statute makes no provision whatever for any relief for an injury sustained from the maintenance of a public nuisance. It is urged with much reason that under the maxim, "*Expressio unius est exclusio alterius*," the remedy prescribed by section 333, *supra*, is exclusive, and that the deduction is strengthened when the remedy thus afforded is considered with reference to the limitation placed thereon by Section 380, Hill's Ann. Laws, which, so far as applicable to the case at bar, reads: "The enforcement or protection of a private right, or the prevention of or redress for an injury thereto, shall be obtained by a suit in equity in all cases where there is not a plain, adequate and complete remedy at law."

In *Fleischner* v. *Citizen's Investment Co.*, 25 Or. 119 (35 Pac. 174), it was held that the remedy provided by the former section is not exclusive, and does not limit the relief for injury resulting from the maintenance of nuisances to actions at law; that whenever a nuisance will cause irreparable injury, menace the life or health of the plaintiff or his family, or the guilty party is not able to respond in damages for the injury, or where numerous actions will be required, equity has "concurrent jurisdiction with courts of law," within the meaning of the

latter section, and will enjoin the continuance of the objectionable conditions. "In regard to private nuisances," says Judge Story in his work on Equity Jurisprudence (Vol. 2, § 925), "the interference of courts of equity by way of injunction is undoubtedly founded upon the ground of restraining irreparable mischief, or of suppressing oppressive and interminable litigation, or of preventing multiplicity of suits." This learned author, after illustrating the doctrine that equitable interposition in the cases of private nuisances ought not to be granted except where the right is clear, says in the following section: "On the other hand, where the injury is irreparable, as where loss of health, loss of trade, destruction of the means of subsistence, or permanent ruin to property, may or will ensue from the wrongful act or erection,—in every such case courts of equity will interfere by injunction in furtherance of justice and the violated rights of the property." The defendant against whom a judgment has been given in an action for damages resulting from a private nuisance may, upon motion therefor, obtain from the court or judge an order to stay the issuing of a warrant to abate the nuisance for such period as may be necessary, not exceeding six months, and allowing the defendant to abate the nuisance himself, upon giving the plaintiff an undertaking that he will abate it within the time specified in the order: Hill's Ann. Laws, § 335. A private nuisance, however, may in some instances become so intolerable to the party whose property, or the enjoyment thereof, is affected thereby, that its discontinuance becomes an imperious necessity, in which case equity only can afford the immediate relief demanded, because the slow process of the law courts is not adequate to the occasion. It is the inadequacy of the legal remedy referred to in section 380, *supra*, that forms the exception to the gen-

eral rule, and thereby confers upon a court of equity jurisdiction, in a case of private nuisance, to intefere in behalf of the injured party, and to grant speedy relief. Our statute having made no provision for the suppression of a public nuisance, except by indictment, any remedy beyond that, if it exist, must be found in the rules of the common law.

3.  "In regard to public nuisances, the jurisdiction of courts of equity," says Judge Story in his work on Equity Jurisprudence (Vol. 2, § 921), "seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth." A court of equity, therefore, has jurisdiction to restrain existing or threatened public nuisances by injunction, at the suit of a private person, who suffers therefrom a special and peculiar injury, distinct from that suffered by him in common with the public at large : 3 Pomeroy, Eq. Jur. § 1349, and cases cited in note 4; 2 Wood, Nuis. § 819. "A house of ill fame, or 'bawdy house,' as it is more commonly called in the law," says Mr. Wood in his work on Nuisances (Vol. 1, § 29), "is a public nuisance, and the keeper thereof may be indicted therefor, whether the house is located in a city or a forest. It is *malum in se*, and the court does not need to be informed of its effects upon society, for the common experience of mankind shows that the probable and natural consequences of such an establishment will be detrimental to the moral and social welfare of the public." To the same effect, see, also, *Givens* v. *Van Studdiford*, 4 Mo. App. 498.

4.  The plaintiffs having sought relief in the proper forum, and their complaint having stated facts sufficient to constitute a cause of suit, the remaining question to be considered is whether the evidence introduced at the trial conclusively shows that they are entitled to the relief which they invoke. The evidence tends to show, and

the court below found, that the proximity of the cribs to
Blagen's property may somewhat depreciate its value.
The continuance of a nuisance, not such *per se*, which
renders the adjacent property less salable, or prevents
the owner from advantageously letting the premises, or
limits his demise thereof to less reputable tenants, is not
enough to entitle him to equitable relief; for the loss
sustained in these particulars is capable of being com-
pensated in an action for damages :    1 Wood, Nuis. § 3 ;
2 Wood, Nuis. § 789 ;    *Ryan* v. *Copes*, 11 Rich. L. 217 (73
Am. Dec. 106);    *Lansing* v. *Smith*, 8 Cow. 146 ;    *Gibson*
v. *Donk*, 7 Mo. App. 37 ;    *Ballentine* v. *Webb*, 84 Mich. 38
(13 L. R. A. 321, 47 N. W. 485).    In *Hamilton* v. *Whit-
ridge*, 11 Md. 128 (69 Am. Dec. 184), it is held that a
court of equity had jurisdiction to prohibit by injunction
a party from erecting a bawdy house, upon a bill filed by
private parties, alleging that the close proximity of such
a nuisance would deprive them of the comfortable enjoy-
ment of their property, and greatly depreciate and lessen
its value.    In *Cranford* v. *Tyrrell*, 128 N. Y. 341 (28 N. E.
514), suit was instituted to restrain the defendant from
keeping a house of ill fame ;    and it was held that an
unlawful use of property, which renders the premises of
a neighbor unfit for comfortable or respectable occupa-
tion and enjoyment, is a private nuisance, against which
the protection of a court of equity may be invoked, al-
though the use complained of also constitutes a public
nuisance.

In *Hayden* v. *Tucker*, 37 Mo. 214, suit was brought to
enjoin the defendant from keeping jacks and stallions
for service in a yard adjoining and in full view of plain-
tiff's premises, whereby it was alleged that they were
depreciated in value and rendered unfit for habitation,
and it was held that a court of equity was competent to
grant the relief demanded.    Mr. Justice WAGNER, in

speaking for the court, says: "A right of action may lie against a party for a nuisance, where a court would not be justified in interfering to remove it by injunction. To authorize the extraordinary interference, there must be such an injury as from its very nature is not susceptible of being adequately compensated by damages at law, or such as from its continuance or permanent mischief must occasion a constantly recurring grievance, which cannot otherwise be prevented but by injunction. And this remedy will be allowed where the injury is material, and operates daily to destroy or diminish the comfort and use of a neighboring house, and the remedy by a multiplicity of actions for the continuance of it would furnish no substantial compensation." These cases, however, related to enjoining nuisances which were *malum in se*, and maintained or threatened to be carried on in a neighborhood chiefly devoted to family residences. A court of equity will not interfere with the continuance of a lawful business in a locality where the buildings are mainly occupied for business purposes, because a few families may reside in the neighborhood: *Gilbert* v. *Showerman*, 23 Mich. 448; *Doellner* v. *Tynan*, 38 How. Prac. 176. "Where the nuisance," says Chancellor GREEN in *Holsman* v. *Boiling Spring Bleaching Co.*, 14 N. J. Eq. 335, "operates to destroy health or to diminish the comfort of a dwelling, an action at law furnishes no adequate remedy, and the party injured is entitled to protection by injunction." To the same effect, see, also, *Ogletree* v. *McQuaggs*, 67 Ala. 580 (42 Am. Rep. 112). These cases relate to nuisances which were not such *per se*, but the rule so announced can have no application, upon principle, to the continuance of a nuisance which is *malum in se* in a district devoted exclusively to business.

If this were not so, a house of ill fame could be estab-

lished and operated beside a church, in a district in which the buildings were devoted to business or trade, and a court of equity would be powerless to correct the evil. If it were possible for such a thing to exist unmolested in a civilized community, what measure of damages in an action at law would compensate outraged decency, dispel the blush of shame that flushes the cheek of modest virtue, or still the conscience of those who would worship in a sanctuary that was maintained in the least degree by money collected as indemnity from the maintenance of a brothel? All property in a city is affected by the maintenance of a bawdy house, just in proportion to its contiguity thereto, and the damage which such property sustains, while differing in degree, does not differ in kind; and, such being the case, the owner of any such property affected in the same general way as other property therein could not successfully invoke equitable relief to enjoin its continuance. But where, by reason of the proximity of such property to the public nuisance, disgusting scenes and sounds shock the sense of those whose property, or the enjoyment thereof, is affected thereby, the injury sustained is necessarily different in kind from that suffered by the public at large; and, this being so, such persons are entitled to an injunction restraining the same.

One of the witnesses who appeared on plaintiffs' behalf, in speaking of the occupant of a crib in the immediate vicinity of Blagen's property, in answer to the question, "What would the appearance of these women indicate was their occupation?" says: "Why, it is self-evident that they are on the town. For instance, several weeks ago I was walking along there about 6:30 or 7, and the windows were out,—fully open,—and one of the Japanese women was standing around in undress uniform, and several Chinamen were standing around,

negotiating, apparently, on the outside." This evidence, in our judgment, together with other like testimony, tends to show that plaintiffs are entitled to the relief demanded, and hence the decree is reversed, and the temporary injunction made perpetual.

<div align="right">REVERSED.</div>

<div align="center">

Decided 27 March; rehearing denied 22 May, 1899.