[No. 4774.    Decided April 23, 1904.]

E. E. INGERSOLL *et al., Respondents,* v. E. ROUSSEAU, *Appellant.*[1]

NUISANCE—ADJOINING PROPERTY—RIGHTS RUNNING WITH LAND —CONTINUING OFFENSE.  In an action to enjoin a continuing nuisance upon adjoining premises, rendering plaintiffs' prop̄ ty unfit for residence purposes, it is immaterial that plaintiff pur· chased his property after the commencement of the nuisance, as the right of action existing in favor of plaintiffs' grantors runs with the land, and, also, is a continuing offense, and lapse of time bars recovery only for a completed offense.

NUISANCE—ABATEMENT—DISORDERLY HOUSES — TOLERATION BY CITY NO DEFENSE.  The fact that city officials tolerate the maintenance of bawdy houses is no defense to an action to abate the same as a nuisance specially injurious to adjoining property.

SAME—ABATEMENT AT SUIT OF PRIVATE CITIZEN — SPECIAL INJURY.  The owner of adjoining premises may sue to abate the maintenance of bawdy houses as a public nuisance specially injurious to his premises used for residence purposes, where the occupants are compelled to witness indecent conduct and listen to unseemly noises, the injury being special and different in kind from that suffered by the general public.

SAME—INJUNCTION TO ABATE DISORDERLY HOUSE—REMEDIES AT LAW—INADEQUACY.  Injunction lies to abate the maintenance of a bawdy house as a public nuisance specially injurious to plaintiffs' adjoining property used for residence purposes, the common law remedies of indictment and action on the case being inadequate, and this rule has not been changed by statute in this state.

Appeal from a judgment of the superior court for Snohomish county, Denney, J., entered April 3, 1903, upon findings in favor of the plaintiff, after a trial before the court without a jury, perpetually enjoining a nuisance. Affirmed.

*Brownell & Coleman,* for appellant.

[1]Reported in 76 Pac. 513.

FULLERTON, C. J.—This action was brought by the respondents, who were plaintiffs below, to enjoin the appellant from maintaining, or permitting to be maintained, houses of ill fame on certain real property owned by him, situated in the city of Everett. The trial was had before the court without a jury, and resulted in a permanent injunction against the appellant.

The trial court found, in substance, that the respondents and appellant owned lots in the city of Everett lying adjacent to each other; that the respondents used their lots as places of residence for themselves and their families, while the appellant had erected on his property certain buildings or structures which he had divided into rooms or compartments known as "cribs," and which he leased to dissolute and abandoned women to be used as places of prostitution. The court further found that these women employ other dissolute and abandoned women as prostitutes, who exhibit themselves in the windows and at the doors of the houses, and on the verandas and sidewalks in front of the same, dressed in an indecent and immodest manner, and solicit men passing along the street to enter the houses for immoral purposes; that these women draw around them drunken and dissolute men, who engage with them in drunken orgies, and in loud and indecent talk and noisy and boisterous conduct. The court found that the effect of these acts was to render the respondents' properties unfit for residence puroposes, and undesirable for any lawful business, greatly depreciating them in value; that the injury was irreparable, and incapable of being compensated for in damages, and would continue as long as the appellant permitted his premises to be used for such unlawful purposes.

The court further found, however, that the respondents purchased their property after the appellant had con-

structed his cribs and had begun to use his property for the above mentioned purposes. The evidence, also, perhaps justified findings to the effect that the appellant's property is in that part of the city of Everett where the city authorities compel, as far as they can, abandoned and dissolute women, who ply their noxious trade, to reside; and also, that the appellant, after the commencement of this action, but before the trial, remodeled his cribs, making them less conspicuous from the streets and surrounding property than they were before; but it appeared that they were still used, and intended to be used, as bawdy houses, and it did not appear that this change would materially affect the injury done to the surrounding property by the uses to which they were being put.

The appellant excepted to certain of the court's findings on the ground that they were not supported by the evidence, and has included his exceptions in his assignments of error. While he has not seriously pressed this point in his argument, we have, nevertheless, examined the evidence with that thought in view, and have no hesitancy in saying that the evidence abundantly sustains the findings. And we may state here, also, that the finding to the effect that the appellant began making this particular use of his property before the respondents purchased their properties, and the additional findings suggested, do not, in our opinion, affect the controversy, although the appellant seems to regard them as of some importance. The right of the respondents to maintain an injunction, if that right exists at all, is a property right; it runs with the land, so to speak, and existed in favor of the grantors of the respondents, and passed to them by the purchase of the properties. Moreover, the injury is a continuing one, constantly giving rise to a new cause of action, and lapse of time bars a recovery only for a completed offense.

As to the other matters suggested, if it be true that the city authorities tolerated bawdy houses on the appellant's property, that fact would not legalize their maintenance there, much less would it authorize their maintenance, if such maintenance injuriously affected the respondents' properties; and the change in the cribs could not be a defense unless it was shown—which it was not—that the change did away entirely with the injury.

The principal contention on the part of the appellant is that injunction is not the proper remedy. It is argued, (1) that it was not made to appear that the acts complained of were specially injurious to the respondents, or that they suffered a special injury differing in kind from that suffered by the general public; and (2) that the respondents had a plain, speedy, and adequate remedy at law for the nuisance, if it be one.

The first of these objections requires no serious consideration. The respondents suffer, not only all the inconveniences the general public suffers because of the maintenance of the nuisance, but in addition thereto, they are compelled to become witnesses to the boisterous and indecent conduct of the inmates of the houses, and listeners to the loud and unseemly noises made by them and their dissolute companions. The injury caused the respondents by these conditions is clearly special, and different in kind from that suffered by the general public, who are not compelled to be either such witnesses or listeners.

The second contention of the appellant, while not entirely free from difficulty, we think is also without merit. It will be remembered that courts of equity have, from the earliest times, exercised jurisdiction to prevent and abate public nuisances, notwithstanding there has concurrently existed the common law remedies of indictment and action on the case. The jurisdiction was grounded on the inade-

quacy of the legal remedies; it being within the power of courts of equity, not only to abate an existing nuisance, but to do what the courts of law could not do—interpose and prevent threatened nuisances, and, by a perpetual injunction, make their remedies effectual throughout all future time.

It may be true, as has been suggested, that no case can be found in the earlier English reports where a court of equity has interfered by injunction at the suit of a private person to enjoin the maintenance of a bawdy house, but it is equally true that there is no precedent the other way. Doubtless it is some evidence that jurisdiction does not exist, in a given case, to show that it has never been exercised in like cases, but the persuasive force of such evidence is weak or strong owing to the presence or absence of cases announcing the same or similar principles. Here such cases are plentiful. Precedents are abundant where equity has interfered by injunction to prevent and abate public nuisances against which there existed the same common law remedies of indictment and action on the case that existed against the maintenance of a bawdy house. 2 Story's Eq. Jurisp. §§ 921-924; *Attorney General v. Forbes,* 2 Mylne & Craig, 129, 130. It would seem, therefore, that, if equity refused to exercise such jurisdiction in the case of bawdy houses, it was for some reason other than for lack of jurisdiction.

The next question is, has the rule been changed by statute. The statutory legal remedies against public nuisances are much the same as those of the common law. They consist of an information or indictment, and a civil action for damages, with the added element of a warrant of abatement in case of a conviction or of a recovery. The first of these is notoriously inadequate to protect the rights of a person specially injured, for the

very sufficient reason that he has neither the right to institute such an action, nor to control it after it has been instituted; these rights belong, properly enough, to the public officers, who may or may not see fit to exercise them in the particular case. The remedy afforded by an action of damages is more efficient, but it is nevertheless inadequate because the judgment cannot be made continuing in its operation. When the damages recovered are paid, and the warrant of abatement is executed and returned, the judgment is satisfied. The guilty party may, on the next day, create a new nuisance of the same kind at the same place, and the only legal remedy therefor is a new action, a new recovery, and another warrant of abatement; whereas a court can, by the equitable relief of injunction, not only abate the existing nuisance, but it can forbid the creation of other or similar nuisances in the future, entering a judgment that will support an execution whenever its terms are violated. The jurisdiction of the courts to interfere by injunction against public nuisances can rest under the statute, therefore, on the same ground upon which it rested while the common law remedies were in force—on the ground of the inadequacy of the legal remedies.

For precedents where the modern courts have interfered to prevent and abate public nuisances, other than those of the character in question here, we need not look beyond our own decisions. In *Carl v. West Aberdeen Land etc. Co.*, 13 Wash. 616, 43 Pac. 890, we affirmed a judgment enjoining a boom company from obstructing a navigable stream; and in *Smith v. Mitchell*, 21 Wash. 536, 58 Pac. 667, 75 Am. St. 858, we affirmed a judgment enjoining the defendant from obstructing a public highway; each of such acts being subject to the legal remedies of information or indictment, and an action for damages. It

7-35 WASH.

is true this is the first instance in this state where the remedy has been sought against a bawdy house, but there is nothing in the character of this particular form of nuisance that prevents the exercise against it of the equitable remedy of injunction. If it can be exercised to abate such public nuisances as obstructions to highways, and the like, when they become specially injurious to particular individuals, it would be strange indeed if the courts were without jurisdiction to exercise it against this most baneful of all public nuisances, which not only destroys, for lawful use, all property surrounding it, but corrupts and degrades the morals of the community as well.

But we are not without precedent for the precise case. While the precedents are not many, the majority of those that do exist, and we think the better reasoned cases, hold that courts of equity have such jurisdiction. The earliest case called to our attention is that of *Hamilton v. Whitridge,* 11 Md. 128, 69 Am. Dec. 184. There the court noticed the absence of precedent, but rested its decision on analogous cases, the reason and spirit of which supported the rule; saying that there was jurisdiction in equity to enjoin whenever the nature of the injury is such that it cannot be adequately compensated by damages, or from its continuance or permanent mischief will occasion a constantly recurring grievance. In *Anderson v. Doty,* 33 Hun 160, the jurisdiction was denied; the court saying that a bawdy house is a nuisance because it is a crime, and that the proper tribunal in which to abate it is the criminal court. The appellate court of the same state, however, in *Crawford v. Tyrrell,* 128 N. Y. 341, 28 N. E. 514, without noticing the previous case, held that an injunction would lie; the court saying:

"One who uses his property lawfully and reasonably, in a general legal sense, can do injury to nobody. In the

full enjoyment of his legal rights in and to his property, the law will not suffer a man to be restrained; but his use of the property must be always such as in no manner to invade the legal rights of his neighbor. The rights of each to the enjoyment and use of their several properties should, in legal contemplation, always be equal. If the balance is destroyed by the act of one, the law gives a remedy in damages, or equity will restrain. If the use of a property is one which renders a neighbor's occupation and enjoyment physically uncomfortable, or which may be hurtful to the health, as where trades are conducted which are offensive by reason of odors, noises, or other injurious or annoying features, a private nuisance is deemed to be established, against which the protection of a court of equity power may be invoked.

"In the present case the indecent conduct of the occupants of the defendant's house and the noise therefrom, inasmuch as they rendered the plaintiff's house unfit for comfortable or respectable occupation, and unfit for the purposes it was intended for, were facts which constituted a nuisance, and were sufficient grounds for the maintenance of the action. If it was a nuisance which affected the general neighborhood and was the subject of an indictment for its unlawful and immoral features, the plaintiffs were none the less entitled to their action for an injury sustained and to their equitable right to have its continuance restrained."

In *Neaf v. Palmer,* 103 Ky. 496, 45 S. W. 506, the jurisdiction was denied, or perhaps more accurately, the court refused to exercise it in this class of cases. The court noticed the cases of *Anderson v. Doty* and *Hamilton v. Whitridge,* saying that it could not follow the latter "without doing violence to the long established practice in this state of relegating the enforcement of any laws against crime to the criminal courts." Later cases are *Blagen v. Smith,* 34 Or. 394, 56 Pac. 292, 44 L. R. A. 522, decided March 13, 1899, and *Weakley v. Page,* 102 Tenn. 178, 53 S. W. 551, 46 L. R. A. 552, decided March

16, 1899, each affirming the jurisdiction. These cases are ably argued by the judges rendering the opinions, and show, beyond question, that courts of equity have power to enjoin this particular character of nuisance, and that it is their duty to do so in all proper instances. Another case is *Marsan v. French*, 61 Tex. 173, 48 Am. Rep. 272. There it was held that one leasing his property to be used as a house of ill fame was responsible in damages to a proprietor residing with his family on adjacent property; and that he might be enjoined from continuing to permit such use of his property.

There is nothing in the case of *Coffer v. Territory*, 1 Wash. 325, 25 Pac. 632, 11 L. R. A. 296, which denies the power of a court, exercising equitable jurisdiction, to interfere by injunction at the suit of a private person specially injured to enjoin the maintenance of a bawdy house. That case is too long to be even epitomized here, but, if it is pertinent at all, it shows the inadequacy of the legal remedies in cases of the character of the one before us, and the necessity for a more effective remedy.

We are of the opinion, therefore, that the trial court had jurisdiction to enjoin the appellant from leasing his property to be used as houses of ill fame, and that the facts of the case warranted the exercise of the power. The judgment will stand affirmed.

DUNBAR, MOUNT, ANDERS, and HADLEY, JJ., concur.