SNYDER v. KELTER et al.

(Third Division.   Cordova.   January 2, 1912.)

No. C—38.

1. NUISANCE (§ 72*)—DISORDERLY HOUSE—REMEDY OF PRIVATE PER-
SONS.

The Alaska Code provides that "any person whose property is
affected by a private nuisance, or whose personal enjoyment
thereof is in like manner thereby affected, may maintain an
action for damages therefor" (Code Civ. Proc. § 317), etc.   A
property owner who is thus affected by the maintenance of a
bawdyhouse may maintain a suit for damages, notwithstanding
the bawdyhouse is also a public nuisance, where the owner shows
a special injury other than that inflicted upon the general pub-
lic.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 164–
169;  Dec. Dig. § 72.*]

2. NUISANCE (§ 75*)—REMEDY—INJUNCTION.

Before an injunction will issue to restrain the continuance
of a nuisance, pending trial, it must not only clearly appear
that a nuisance exists, but plaintiff's right must be clearly
established;  that is, the necessary extent and character of
the injury on account of the nuisance.   A mere preponderance
of the evidence as upon final trial is not sufficient.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 176–
184;  Dec. Dig. § 75.*]

3. EQUITY (§ 65*)—MAXIMS—CLEAN HANDS—NUISANCE.

Where a party has sought out the location of bawdyhouses,
and voluntarily erected a house for business purposes, intend-
ing to attract those who resort to the bawdyhouses as cus-
tomers, and has acquiesced in the nuisance for a period of time
for that reason, equity will leave the complaining party in the
position he has placed himself, because he does not come into
court with clean hands.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 185–
187;  Dec. Dig. § 65.*]

This matter concerns plaintiff's motion for a temporary in-
junction.   The complaint alleges that plaintiff has been the
owner of certain real property in the town of Cordova since
1908; that she erected thereon a boarding and rooming house,
which cost her $8,000, and, but for the wrongful acts of de-
fendants, she would have realized therefrom $500 a month

---

during the years 1909, 1910, and 1911; that the defendant Hazelet is the owner as trustee of certain real property lying "immediately back" of plaintiff's lot; that defendant Kelter has an interest therein or in the business there carried on, of which complaint is made; that ever since January 1, 1909, defendants have maintained on their property a large house of prostitution, containing about sixty rooms, commonly called a "crib"; that the "noise of obscene carousing" from such establishment is of such an extent as to disturb and offend herself and family and guests at her boarding house, and thereby her business has been practically destroyed; that the damage to her business has been $5,000; that she has been further damaged $5,000 in suffering and shame and annoyance occasioned to her thereby. She prays the recovery of $10,000; that defendants be enjoined from maintaining the bawdyhouse; that defendants' structure be adjudged a nuisance and abated.

The defendant Hazelet's answer admits the plaintiff's ownership, denies having any interest in the premises, and alleges a sale by him to the other defendant September 1, 1908, and denies all the other allegations of the complaint.

Defendant Kelter, answering, admits plaintiff's ownership, and admits that as owner and lessee, and not otherwise, he had an interest in some portion of the property complained against, and admitted erecting a building thereon. He denies the other allegations of the complaint.

Plaintiff supported her motion for a temporary injunction by her own affidavit made November 28, 1911, stating that she was from her premises continually compelled to experience indecent sights and sounds emanating from defendant's premises; that the annoyance therefrom is greatest when steamers are in port; that on the night of November 24, 1911, while a steamer was in port, the public automobile of the town made at least six trips to said house of defendants; that until three in the morning there was a "constant succession of obscene and ribald noises plainly to be heard in nearly every part of plaintiff's house emanating from said premises"; that her business of running a rooming house has been practically destroyed.

Counter affidavits were filed by defendant Kelter, including his own, that of the mayor and chief of police, a councilman of said town, and two of plaintiff's nearest neighbors, one residing nearer the premises complained of than herself, the affidavits of three men, one owning, one running, and one in the automobile throughout the night mentioned by her, as well as the affidavits of others. In these affidavits denial is made of all the material allegations of plaintiff's complaint, save the ownership of her property, and further stating that plaintiff bought and improved her premises with knowledge of the uses to which these premises were put and to be put; that it was a matter of general knowledge at the time; that she first constructed a bowling alley and cigar stand on her premises in order to be near and secure the patronage of the occupants of defendants' premises; that they were frequent patrons of plaintiff's said bowling alley; that, upon the decline of said business, the bowling alley was converted into a lodging house; that, · before the plaintiff removed to Cordova, she was conducting a bowling alley in the town of Eyak, a suburb of Cordova, which bowling alley was located in the immediate vicinity of the saloons and bawdyhouses there conducted, during and prior to her location; that defendants' premises are inclosed in such manner as to be wholly secluded from view from any part of plaintiff's premises; that they are conducted in a quiet and orderly manner; that families residing as near and nearer to them than the plaintiff have not been 'during such time disturbed by any such sights or sounds as plaintiff charges, members of which families swear that there were no such sights and noises; that the occupants of defendants' premises were quiet, orderly, and well behaved. Defendants allege that plaintiff has not brought this suit in good faith but to compel the defendants to purchase her property. The affidavits further set out that the loss, if any, in plaintiff's business has been caused by the fact of a general decline in the business of said town; that it is oversupplied with lodging houses; that the block in which plaintiff's building is located is too far away from the general business section; that most of the buildings

4 A.R.—29

in the block are vacant, some of them better buildings and better situated for business purposes than the plaintiff's; that the automobile mentioned made only two and not six trips to defendants' premises on the night of which complaint is made, and at such time there was no noise, disturbance, obscenity, or ribaldry; that defendants' premises have been especially quiet during the past year, having but few occupants.

Plaintiff filed her reply affidavit, denying want of interest on the part of the defendant Hazelet in the property of which she complained, denies that she knew at the time of her purchase that a bawdyhouse was to be erected in the immediate vicinity; that at such time she asked defendant Hazelet if the "restricted district" was to be in that neighborhood; that he told her it would not; that it was to be placed more than 1,200 feet away; that without such assurance she would not have bought the said property. She denies that her bowling alley was maintained for the purpose of securing the patronage of defendants' "cribs"; that there were only three occasions that the inmates thereof visited said alleys, and that on the last two she personally ordered them out and forbade their return; that certain of her customers, not named, on leaving have given as the reason therefor the disturbance caused by said alleged bawdyhouse. She denies want of good faith in bringing suit, admits that defendants at the time of her purchase had set apart this property for a "restricted district," but denies that such fact was universally known, or that she knew it. She admits the construction of a fence around the property, between it and hers. Plaintiff also filed an affidavit by a laundryman, whose place of business is across the street from her house, stating that he had in the past frequently to close the doors and windows of the laundry to protect the girls there working from the profanity and disturbance emanating from such "crib."

Defendants filed affidavits of the laundryman's partner and the chief of police of Cordova contradicting him and alleging that he was a man of bad moral character. The defendant Hazelet filed his affidavit denying any such conversation with plaintiff or any one as that charged by her.

John H. Cobb, of Juneau, and Edmund Smith, of Valdez, for plaintiff.

Ostrander & Donohue, of Valdez, for defendants.

CUSHMAN, District Judge. The gist of this action is for damages on account of a private nuisance and for the abatement thereof.

Section 317, pt. 4, Carter's Codes, provides:

"Any person whose property is affected by a private nuisance, or whose personal enjoyment thereof is in like manner thereby affected, may maintain an action for damages therefor. If judgment be given for the plaintiff in such action, he may, in addition to the execution to enforce the same, on motion, have an order allowing a warrant to issue to the marshal to abate such nuisance. Such motion must be made at the term at which judgment is given, and shall be allowed of course, unless it appear on the hearing that the nuisance has ceased, or that such remedy is inadequate to abate or prevent the continuance of the nuisance, in which latter case the plaintiff may proceed to have the defendant enjoined."

The question to be determined is whether, under this law and the facts set out in the pleadings and affidavits, the court will, in the exercise of its discretion, issue a temporary injunction against the defendants, restraining them from maintaining, conducting, and carrying on a bawdyhouse from the premises described. A bawdyhouse is a nuisance per se. 29 Cyc. p. 1166; 14 Cyc. p. 484b, and citations. It is also a public nuisance. Id. p. 482.

"The same act or structure may be a public nuisance, also a private nuisance as to a person who is thereby caused a special injury other than that inflicted upon the general public." 29 Cyc. p. 1153, note 8, and citations; Cranford v. Tyrrell, 128 N. Y. 341, 28 N. E. 514.

The above-quoted statute (section 317) is therefore applicable to this character of case, notwithstanding a bawdyhouse is a public nuisance, and the statute reads:

"Any person whose property is affected by a private nuisance."

No reason is apparent to restrict the meaning to a nuisance strictly private and in no sense public. If the word "nuisance" had been used in the statute instead of the words "private

nuisance," it would have changed the common-law rule that a party suing on account of a public nuisance must show an injury different in kind and not in degree from that sustained by the general public before he can prevail. It was doubtless to preserve the common law in this respect and to avoid uncertainty that the words "private nuisance" were used.

"A public nuisance does not furnish grounds for an action, either in law or equity, by an individual who merely suffers an injury which is common to the general public, but an individual who sustains an injury peculiar to himself may have relief against a public nuisance and is entitled to proceed in equity for the abatement of or an injunction against the nuisance or to maintain an action at law for damages on account of the special injury which he has received. It is absolutely essential to the right of an individual to relief against a public nuisance that he should show that he has suffered or will suffer some special injury other than that in which all the general public share alike, and the difference between the injury to him and the injury to the general public must be one of kind and not merely of degree." 29 Cyc. p. 1208 et seq.

Such an injury may consist in a case, such as is claimed here by the plaintiff, of an injury to her business of running a boarding house or the comfortable enjoyment of her property occasioned by having to see or hear habitually indecent or obscene sights or sounds emanating from adjacent premises. Before an injunction will issue, it must not only clearly appear that a nuisance exists, but plaintiff's right must be clearly established; that is, the necessary extent and character of her injury on account of the nuisance. 29 Cyc. 1225f, 1228j, et seq.

"The right asserted by the complainant, however, must be perfect, clear, and free from doubt, where the effect of a preliminary injunction will be more than merely the maintenance of the status quo." 22 Cyc. p. 753.

A mere preponderance of the evidence as upon final trial is not sufficient.

"One who has slept upon his rights for a considerable time by acquiescing in the alleged nuisance will be denied equitable relief and left to his remedy at law." 29 Cyc. p. 1231, and citations.

Where the nuisance acquiesced in is one per se of the character of the one of which complaint is here made, if the party

complaining has sought out the nuisance and acquiesced therein, equity will leave the complaining party in the position he has placed himself, because he does not come to the court with clean hands.

It may be considered in this case that the premises complained against have been, during the time in question, used as a bawdyhouse by certain unnamed persons, although defendants deny any connection with it as such. Plaintiff's right in the matter because of any injury she or her property may have suffered, or whether her own conduct is or has been equitable, is not so clear, under these contradictory affidavits, as to entitle her to the extraordinary relief asked. All these affidavits were made without the right of cross-examination. Many of those submitted by the defendants deny any special or peculiar injury to plaintiff or her property. Certain of the circumstances alleged, to wit, that plaintiff, prior to coming to Cordova, while at Eyak, established and carried on her business in close proximity to the bawdyhouse there situated; that when leaving Eyak she established herself near where it was well and generally known that the bawdyhouses were to be located in Cordova, for the purpose of procuring the patronage of the occupants thereof; that prostitutes therefrom frequently patronized with her knowledge and consent the business carried on upon her premises; that she refrained for two or three years from making any complaint on account thereof, refrained in fact until the business of said bawdyhouse had, in common with other lines of business of said town, greatly fallen off, and, in consequence of such decline and the lessening number of prostitutes occupying said premises, such sounds as now and of late have emanated therefrom have in proportion diminished—would tend to render still less clear the plaintiff's right to equitable relief.

Plaintiff's counsel rely upon the cases of Cranford v. Tyrrell, 128 N. Y. 341, 28 N. E. 514, Ingersoll v. Rousseau, 35 Wash. 92, 76 Pac. 513, 1 Ann. Cas. 35, and Weakley v. Page, 102 Tenn. 178, 53 S. W. 551, 46 L. R. A. 552. These cases all involved final trials upon the merits, where the cross-examination of all the witnesses had been used in developing

the truth as to the issues, the conduct, and good faith of the parties, where the responsibility of the defendants as to the offending premises was admitted. The findings of the court in each of these cases as to the nature of the annoying sights and sounds inflicted upon the occupants of plaintiff's premises were more fully set forth and described than was done in any of the affidavits in this case. In the last case the court says:

"The question is: In what cases and under what circumstances is the jurisdiction (of a court of chancery) exercised? Judge Story lays down the rule that 'in all cases of this sort, if the right be doubtful, the court will direct it to be tried at law.'"

In Ingersoll v. Rousseau, supra, the court says:

"The next question is: Has the rule been changed by statute (the jurisdiction of courts of equity)? The statutory legal remedies against public nuisances are much the same as those of the common law. They consist of an information or indictment, and a civil action for damages, with the added element of a warrant of abatement in case of a conviction or of a recovery. The first of these is notoriously inadequate to protect the rights of a person specially injured, for the very sufficient reason that he has neither the right to institute such an action nor control it after it has been instituted. These rights belong, properly enough, to the public officers, who may or may not see fit to exercise them in the particular case. The remedy afforded by an action of damages is more efficient, but it is nevertheless inadequate, because the judgment cannot be made continuing in its operation. When the damages recovered are paid, and the warrant of abatement is executed and returned, the judgment is satisfied. The guilty party may on the next day create a new nuisance of the same kind at the same place, and the only legal remedy therefor is a new action, a new recovery, and another warrant of abatement, whereas a court can, by the equitable relief of injunction, not only abate the existing nuisance, but it can forbid the creation of other or similar nuisances in the future, entering a judgment that will support an execution whenever its terms are violated. The jurisdiction of the courts to interfere by injunction against public nuisances can rest, under the statute, therefore, on the same ground it rested while the common-law remedies were in force—on the ground of the inadequacy of the legal remedies."

The particulars in which that court found the statutory remedy inadequate are supplied by the Alaskan statute, which provides:

"Such motion [for warrant of abatement] must be made at the term at which judgment was given and shall be allowed, of course unless it appears on the hearing that the nuisance has ceased or

that such remedy is inadequate to abate or prevent the continuance of the nuisance, in which latter case the plaintiff may proceed to have the defendant enjoined."

Plaintiff's counsel further rely upon the cases of Hamilton v. Whitridge, 11 Md. 128, 69 Am. Dec. 184, and Blagen v. Smith, 34 Or. 394, 56 Pac. 292, 44 L. R. A. 522. In both of these cases the status quo was sought to be maintained. It was alleged in effect that defendants had fitted up establishments and were preparing, and unless restrained by the court would rent, them to prostitutes to be used as houses of prostitution.

In none of the foregoing cases was there any question of the plaintiff's good faith in bringing the suit or of the equity of his own conduct.

The last case cited, it is contended, holds that the Oregon statute, similar to the Alaskan statute, does not afford adequate relief because it is limited to private nuisances. It does not distinctly appear in the decision that this was held. If such were the rule, the greater part of the decision is unnecessary; in fact, the contrary appears, as the court therein cites Cranford v. Tyrrell, 128 N. Y. 341, 28 N. E. 514, to the effect that:

The "unlawful use of property (such as for a house of ill fame), which renders the premises of a neighbor unfit for comfortable or respectable occupation and enjoyment, is a private nuisance, against which the protection of a court of equity may be invoked, although the use complained of also constitutes a public nuisance."

It is not necessary to decide in this case that section 317, quoted above, affords an adequate remedy at law for all nuisances, for there may be cases so imperatively demanding immediate relief as to require the aid of a court of equity to avoid irreparable injury; but, to call into action this extraordinary power, the right of the plaintiff must be clear, and his conduct made to clearly appear entirely equitable. Equity will not on their disclaimer enjoin defendants from continuing a nuisance per se, involving grossly immoral conduct.

Enough is shown by the pleadings and affidavits to disclose that, among the issues in this case, will arise the fact of de-

fendants maintaining a bawdyhouse; the nature of the acts sufficient to show that fact; the character of the annoyances arising therefrom; the radius to which they extend and to what extent they are modified by circumstances; the damage to plaintiff and her premises having arisen therefrom; whether any portion of the damage to plaintiff's premises was caused by her allowing lewd persons therein as alleged, and, if so, the amount thereof; the good faith of the parties and the credibility of the witnesses. There is no reason to suppose that the chancellor would be better equipped and qualified to determine these questions than a jury. The greater part of the issues are such that their determination is peculiarly the function of a jury. If the law action proves inadequate, equity will find a way to protect the rights of all against injury from such a nuisance.

The motion will be denied.