## N. Y. SUPERIOR COURT.

### JOHN F. DOELLNER agt. JOHN TYNAN.

An *injunction* will not be granted to restrain a *blacksmith* from pursuing his trade in a proper and suitable place, and carried on in a well regulated and proper manner, although it may be offensive to persons living in the immediate vicinity.

*Blacksmithing*, especially where it principally includes *horse-shoeing*, is a necessary trade, and must be carried on in places not too remote from the habitations of men.

Where a street in a city ceases to be used or occupied as a place of residence, and is changed into a place of business, no one or two persons, who may for any reason, desire to continue a residence therein, should be allowed to prevent the carrying on of a lawful and useful trade, merely because they are or may be subjected to annoyance, or even loss thereby. Better that they should go elsewhere than the public should be inconvenienced by arresting a necessary and useful business, and the trade of an artizan broken up.

*Special Term, April,* 1869.

THIS action was brought to obtain a perpetual injunction restraining the defendant from carrying on the business of a blacksmith in and upon the premises known as No. 201 Ninth street, in this city. The plaintiff is the owner and occupier of the adjoining building, known as No. 203 Ninth street. Upon the first floor and in the basement of the plaintiff's building he carries on the business of a dealer in pianoforte materials, and of covering pianoforte hammers with felt. The upper stories are occupied by the plaintiff as a residence for himself and family. He purchased the premises in February, 1865. The defendant became the owner in July, 1867, of the adjoining premises, No. 201 Ninth street, which, up to that time, had been occupied as a private stable. Between the buildings is a party-wall, twelve inches thick to the third story, and eight inches thick above that story. The defendant extended his build-

ing, and made alterations therein, erecting forges and constructing chimneys in the party-wall, and is carrying on upon the first floor of said building his business of blacksmithing, which consists chiefly of shoeing horses. The upper floors are occupied by the defendant and his family as a residence. The anvils, forges, and chimneys are all in the defendant's building, adjacent to or in the party-wall.

It is alleged by the plaintiff that by constructing said chimneys and inserting the beams of the defendant's building into such party-wall, it has been required to bear the weight of such forges and chimneys, and the heavy material used in the defendant's business, and has thereby weakened said party-wall. That in carrying on the defendant's business, he causes a continuous noise of pounding, filing, cutting bars of wire, and hammering, which is plainly heard in the plaintiff's building, producing great discomfort and annoyance to himself and the other inmates of his house. That such hammering, and the working of machinery in the defendant's shop, produces a vibration and jar in the plaintiff's house, from an early hour in the morning until a late hour in the evening, loosening the plaster and shaking the windows, thereby interrupting the manufacture of pianoforte hammers, by rendering it very difficult to cut and prepare felt, and in covering such hammers. That large quantities of ashes and cinders are emitted from the defendant's chimneys, falling upon and entering into the plaintiff's premises, injuring his furniture and materials used in his business, and obstructing the water-leaders from the roof. That large numbers of horses are daily brought to the defendant's shop to be shod, which are led over the sidewalk, soiling and rendering the same offensive and filthy. That the burning of the hoofs of horses in process of shoeing produces volumes of smoke, which emit pungent, noxious and offensive smells, tainting the atmosphere in the plaintiff's house and in the vicinity. That the horses, while being shod or waiting to be shod, frequently become restive,

and by stamping and kicking make a loud and unpleasant noise and confusion.

By reason of all these acts and doings of the defendant, the plaintiff alleges that he has been injured in the enjoyment of his premises; has been interrupted and hindered in carrying on his business, and the value of his property has been greatly lessened.

On the part of the defendant it was denied that the use of the party-wall by the defendant had weakened or otherwise injured it; and it was shown that the forges, chimneys, and all the apparatus used by the defendant in his business were constructed of the best workmanship, and that the business itself was carried on in as proper and little offensive a manner as it was possible to carry on such a business. There was considerable evidence as to the character of the buildings in the immediate neighborhood, and the purposes for which they were used, the weight of which evidence, as found by the court, establishing that such buildings were chiefly used for carpenter shops or private stables.

It was ascertained, upon a private view taken by the court, that the plaintiff's house is on the south side of the street, from one hundred and, fifty feet to two hundred feet westerly of Second avenue; that there is but one (exclusively) dwelling-house on the south side of the block between Second avenue and Stuyvesant street, and none on the north side of the block. Excepting the one dwelling-house, the block from the corners of Second avenue (which have dwellings fronting the Second avenue), is wholly occupied by stables, carpenter, or other shops. The labor bureau of the commissioners of charities and corrections is at the junction of Stuyvesant street and Ninth street. The upper parts of many of the buildings, which are mostly a story and a half high, are occupied as residences, but the basements and first stories of all the buildings in the block, with the one exception above stated, are used and occupied as stables, or for business purposes.

Doellner agt. Tynan.

On the trial the allegations of the plaintiff, as set forth in his complaint, were substantially proven; and it was established that, notwithstanding the forges and apparatus of the defendant had been constructed in the best and most approved manner, and his business carried on in the most careful way it is possible to carry on such a business, yet, that the business was of a character to annoy and disturb, and did annoy and disturb the plaintiff, and did interfere with, and deprive him of the full enjoyment of his property. The evidence did not establish that the value of the plaintiff's property was materially affected by the defendant's business; but there was evidence that the vibration and jar produced by the hammering in the defendant's shop had injured the plastering in the plaintiff's building, and that the dust, cinders, and smoke had injured the stock of material and manufacture of the plaintiff.

Mr. D. M. HELM, *for plaintiff.*
Mr. J. O. ROBINSON, *for defendant.*

MONELL, J. I am not justified by the evidence in this case, in finding that the value of the real estate of the plaintiff has been depreciated by the defendant's business. For the purposes of a residence for a private family, there can be no doubt its value has been materially lessened; but in the market, for a business not materially affected by the annoyances which proceed from the defendant's shop, or for any other suitable purpose, the weight of the evidence shows that the value of the property has rather increased than depreciated since the erection of the defendant's building. But I am justified in finding, and I have found, that the plaintiff's business has been in some measure interrupted and disturbed, and the enjoyment of his premises as a residence for himself and family in some degree impaired by the business carried on by the defendant in the adjoining building.

It is well settled that if any trade or business, otherwise lawful, is carried on in such a manner, as to render the enjoyment of life and property uncomfortable, it is a nuisance. It is not required that the trade or business should be detrimental to life or health, or that it should injuriously affect the value of adjacent property. It is enough, if it can be seen, that its beneficial use for the purposes to which it has been devoted, has been impaired, and its comfortable enjoyment interrupted or destroyed. The rule of the common law, that a man shall so use his own as not to interfere with others, extends to every act as well as to every use, and the mere lawfulness of a trade or calling will not excuse or justify the destruction of, or interference with, the comfortable enjoyment of his property by another.

This general doctrine has been applied to a variety of businesses, which were lawful in themselves, but which rendered the residences of others unfit for comfortable habitations, such as a smith's forge (*Besby* agt. *Gill, Lutw.* 69); swine-sty (*Aldred's case*, 9 *Reps.*, 59 *a.*) lime-kiln (*Ibid, per Gray, C. J.*); and tallow-furnace.

In *Fish* agt. *Dodge* (4 *Denio*, 311), the business of finishing steam-boilers, whereby the occupant of an adjoining house was disturbed by the noise and dust, was held to be a nuisance. So, a coal-yard in a city, from which offensive dust and smut arose, and was diffused into the premises of neighboring inhabitants, was held to be a nuisance within a covenant against "anything offensive to the neighboring inhabitants" (*Barrow* agt. *Richard,* 8 *Paige,* 351). A slaughter-house was declared to be *prima facie* a nuisance (*Cathie* agt. *Valentine,* 9 *Paige,* 575). It was there repeated, that it was not necessary that the trade or business should endanger health; but it was sufficient if it was oppressive to the senses, rendering the enjoyment of life and property uncomfortable. And in this court (*McKeon* agt. *See,* 4 *Robt.*, 449, *where all the cases are carefully collected*) it was held, that the carrying on of the business of sawing blocks

of marble, · by saws and machinery propelled by steam-power, the vibration and jar produced by which, was injurious to the adjacent property, was a nuisance. In that case it was shown, that the defendant's business was lawful and publicly beneficial, and conducted with every reasonable precaution, as to the character of his building and machinery and mode of using them to prevent unnecessary injury to the plaintiff, and the decision was put on the ground that " the right of jarring a neighbor's house, by the motion of a ·steam engine, upon one's own premises, cannot depend at all upon the utility and lawfulness of the purpose for which such motion is employed, or of its final results. The intermediate injury, before such results are obtained, wrought upon another's property or enjoyment of life, makes such employment unlawful." And so *Norcross* agt. *Thoms* (51 *Maine*, 503).

The annoyance and the disturbance of comfort and the enjoyment of property, however, must be substantial and real. The law will not regard trifling inconveniences. Therefore, noxious vapors arising on another's land must be such as visibly to diminish the value of adjacent property, or the comfort and enjoyment of it (*Bamford* agt. *Turnley*, 3 *B. & S.* 66 ; *Tipping* agt. *St. Helen's Smelting Co..* 4 *Id.* 608, 616, 1,093).

From the cases which have been cited, and many others which might be, it appears to be well established that any lawful business or trade may be a nuisance, if it is conducted in a manner which is injurious to the comfortable enjoyment of another man's property. It need not be detrimental to health, or endanger life ; nor is it necessary that it should directly depreciate the value of property. If in the manner and for the purposes such property may be used, its enjoyment is so interfered with as to destroy or greatly impair its comfortable use, it is a nuisance against which the law will protect the injured.

In this case the grounds of complaint are, that the com-

fortable enjoyment of the plaintiff's property is, to an injurious degree, affected by the vibration and jar produced by the hammering of iron and the working of machinery; by the dust and cinders which arise from the forges and chimneys; by the smoke from burning hoofs of horses; by the collection of wagons and horses in the immediate vicinity; the stamping of horses, and the filth produced while standing outside. There are also other grounds alleged, namely, that the building of the plaintiff is receiving constant injury, and his business interrupted by the same causes.

But while I have been compelled by the evidence to find that all these alleged causes of annoyance to the plaintiff do exist, and that they proceed from the defendant's premises, and from the manner of conducting his business, yet there are other considerations and principles which have, in my judgment, a controlling influence upon this case.

The business of blacksmithing and horse-shoeing is a lawful business, and is not *per se* a nuisance (*Ray* agt. *Lynes*, 10 *Ala. R.* 63). It is of great benefit, utility, and convenience to the public, and may rightfully be carried on for private emolument, provided it be done in a proper and convenient place. COMYN says (*Comyn Dig. tit. Action upon the Case for a nuisance, C.*), an action "does not lie for a reasonable use of my right, though it be to the annoyance of another; as if a butcher, brewer, etc., use his trade in a convenient place, though it be to the annoyance of his neighbor."

The case of *Hale* agt. *Barlow* (4 *C. B., N. S.* 334), was an action at law for damages. The defendant had erected a brick-kiln on his own land, in front of the plaintiff's house, wherein he burned large quantities of brick, causing noxious and unwholesome vapors to arise, injuring the plaintiff's premises, rendering his dwelling uncomfortable, unhealthy, and unfit for habitation. Justice BYLES, in charging the jury, said, "it is not everybody whose enjoyment of life

and property is rendered uncomfortable by the carrying on of an offensive or noxious trade in the neighborhood that can bring an action," and he instanced the neighborhoods of Birmingham and Wolverhampton, in England, which he said would be full of persons bringing actions for nuisances, arising from the carrying on of the noxious and offensive trades in their vicinity, to the great injury of the manufacturing and social interests of the country. He further said : ."I apprehend the law to be this, that no action lies for the use—the reasonable use—of a lawful trade in a convenient and proper place, even though some one may suffer annoyance from its being carried on. That the mere temporary burning of bricks, from clay dug on the spot, in a neighborhood in the outskirts of London, which no one could say was an inconvenient place for the purpose, though it might cause annoyance to one or two persons residing near, would not afford a ground of action. *If it were not so, it would be exceedingly difficult to find any place, within a reasonable distance, at which this sort of trade could be exercised at all."* And he instructed the jury that " although the nuisance might be such as to render the plaintiff's enjoyment of his life and property uncomfortable, yet if they should find that the place where the business was carried on was a convenient and proper place for the purpose, the action could not be maintained." Upon appeal, the charge was fully sustained by the court *in banc* where the text from *Comyn, Selwyn's Nisi-prius,* 10*th Ed.* 1115, 7*th Am. Ed.,* 1119, *and Gale on Easements* 198, were quoted as authorities. The same doctrine was maintained in *Atorney-General agt. Lee,* (3 *Mad. Chy.* 301), where an injunction was sought to restrain the erection of a mill, which it was alleged would be injurious to health. The court there says : " But it appears to us this is a case of private nuisance, if a nuisance at all, in the erection of a mill which will be a public convenience ; and there is nothing to show us that there is so great a disproportion between the private suffer-

ing and the public convenience as would authorize the court to interfere." And in *Pottstown Gas Co.* agt. *Murphy* (39 *Penn. R.*, 257), it is said "That a certain degree of offensive odor is unavoidably incident to the gas-making, and must be endured by the public."

These cases illustrate and sustain the proposition that an action will not lie, if a lawful trade, which may be offensive to persons living in the vicinity, is carried on at a proper and suitable place. (*See also cases cited in notes q. r. r. to Broom's Legal Maxims*, 165; 1 *New Law Library*, 84).

The evidence furnished in this case, as well as a personal examination, which I have thought it not improper to make, of the street and neighborhood in which the defendant's shop is situated, has led me to the conclusion that it is a convenient, proper, and suitable place for such a business There are no (exclusively) dwelling-houses in the block on the north side, and but one on the south side. The street, which was formerly occupied for private stables, is now used mostly for shops of various descriptions, having some families occupying the upper stories. In short, the entire street, from the corner of the Second avenue is, with the one exception I have mentioned, now used and occupied for stabling horses, or for business purposes.

A horse-shoeing establishment is in one sense a *public* convenience, as much so as a city railway; and, as was said in regard to the latter (*Williams* agt. *N. Y. Central R. R. Co.*, 18 *Barb.*, 247) the annoyances complained of are such as are experienced by dwellers in populous towns and cities, and must be endured without redress, because they are of minor importance compared with the general good. Blacksmithing is also a necessary trade, and must be carried on in places not too remote from the habitations of men. Where then can it be carried on? Is there any locality in the inhabited part of this city where such a business, with its incidental annoyances, can be conducted without subjecting some one person to discomfort and suffering? Such estab-

lishments are found in many parts of the city. They are located in business streets, where the upper portions of houses are occupied as residences; and so long as they are necessary and a convenience to the public, no reasonable objection can be made. If the business cannot be carried on in such locations, because a few are annoyed, it would have to be removed to parts too remote for usefulness. If, therefore, the defendant has erected his forges, and is conducting his business in a convenient and proper part of the city, and in a careful and orderly manner, he should not be interfered with merely because such business is incidently annoying to the plaintiff, or injurious to his business, or even renders the enjoyment of his property uncomfortable; especially as the evidence shows, and I am justified in finding, that the defendant has constructed his shop in the best and most improved manner, and is conducting his business so as to give as little annoyance to others as is possible. The maxim, *salus populi suprema lex*, is not inapplicable to such a case; and if the plaintiff is unwilling to endure the annoyances or to sustain the losses to his business, he must seek some place where he will not be disturbed.

So far as the plaintiff's property is injured by the construction of the defendant's forges and chimneys, or by the use of the party-wall, or his business is affected by the vibration or jar, and dust which proceeds from the defendant's shop, there is an adequate remedy at law, and they furnish no grounds for equitable relief. The chancellor says, in *Van Bergen* agt. *Van Bergen* (3 *J. C. R.*, 287), " it must be a strange and mischievous case of pressing necessity, or the right must have been previously established at law, to entitle the party to call to his aid the jurisdiction of this court" (*White* agt. *Cohen*, 19 *Eng. L. and Eq.*; *Att.-Gen.* agt. *Nichol*, 16 *Vesey*, 338).

As there cannot be any legalization of a nuisance by prescription, and as all offensive trades which have been carried on without complaint in parts of the city, remote at the

time, must yield to the advance of improvement; and although unobjectionable when begun, having since become detrimental to the full enjoyment of other property, must nevertheless, be removed to other parts (*Howard* agt. *Lee*, 3 *Sandf.*, *S. C. R.*, 281; *Brady* agt. *Weeks*, 3 *Barb.*, *S. C. R.*, 157); so, I think, that where a street in a city ceases to be used or occupied as a place of residence, and is changed into a place of business, no one or two persons, who may for any reason, desire to continue a residence therein, or shall persist in continuing to reside therein, should be allowed to prevent the carrying on of a lawful and useful trade, merely because they are or may be subjected to annoyance, or even loss thereby. Better that they should go elsewhere, than that the public should be inconvenienced by arresting a necessary and useful business, and the trade of an artizan broken up.

There must be judgment for the defendant with costs.