(No. 5667. Decided June 14, 1905.)

E. DEMPSIE, *Appellant,* v. F. L. O. DARLING *et al.,*
*Respondents.*[1]

NUISANCE—INJUNCTION TO ABATE DISORDERLY HOUSE—ADJOINING PROPERTY NOT OCCUPIED—COMPLAINT—SUFFICIENCY. Injunction lies to abate the maintenance of a bawdy house as a public nuisance specially injurious to plaintiff's vacant adjoining property, where it is alleged that plaintiff intends to at once build thereon for residence purposes; and, upon demurrer, such allegation sufficiently shows the certainty of damage to authorize injunction; the remedies at law being inadequate.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered March 18, 1905, dismissing an action to abate a nuisance, upon sustaining a demurrer to the complaint. Reversed.

*Harris Baldwin,* for appellant.

*Henley & Kellam,* and *Sullivan, Nuzum & Nuzum,* for respondents.

[1] Reported in 81 Pac. 152.

DUNBAR, J.—The complaint in this case alleges, in substance, that the appellant owns a parcel of vacant ground, in the city of Spokane; that contiguous to this ground is a house and lot owned by the respondent Philadelphia Securities Company; that the house has three stories; that the respondent Philadelphia Securities Company, for a long time has been, and is, renting the second and third stories of the house to respondent F. L. O. Darling, as and for a house of ill fame, and for the purpose of enabling her, as proprietress, to conduct a house of prostitution therein, and to enable her to have and harbor therein prostitutes and lewd and abandoned women for the purposes of prostitution; that, pursuant to said purpose, the said respondent F. L. O. Darling has been, and is, conducting a house of prostitution in the second and third stories of said house, and that prostitution has been, and is, practiced in the second and third stories, by the said proprietress and the other respondents, who are lewd and abandoned women, and reside therein; that it is the wish and purpose of appellant to build at once upon his said vacant ground a house, to be by him devoted to and occupied for some respectable and lawful purpose; that, by reason of the conducting of a house of prostitution in the aforesaid second and third stories of said house, and the presence of prostitutes therein, any house which appellant might build upon his ground would be undesirable for any lawful use, and he could not occupy it or rent it for any lawful purpose; and that, by reason of the facts above stated, his ground is being continuously and irreparably damaged by diminution in value; and an injunction was prayed for. The respondents interposed a demurrer, to the effect that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and the appellant having refused to plead further, a final judgment of dismissal of the action was rendered in favor of respondents, from which judgment this appeal is taken.

We think the court erred in sustaining the demurrer to

this complaint.  It is contended by the respondents, in sustentation of the action of the court, that, inasmuch as the plaintiff's lot was a vacant lot, and that a house had not already been built upon it which would be affected by the nuisance complained of, the damages are, therefore, too remote and speculative; that the plaintiff has not yet built upon said lot, and that he may never do so.  But the allegation of the complaint is to the effect that it is the purpose of the plaintiff to build at once upon this lot a house for the purpose of lease or rent for some reputable and lawful purpose; and it would seem unreasonable to compel the plaintiff to wait until he had been to the expense of constructing a house and advertising the same for rent for a reasonable time before applying to the courts for a remedy which would necessarily, in the natural process of litigation, be delayed for a considerable length of time, thereby depriving him of a right to which he is entitled, viz., to enjoy the use of his property without hindrance through the operation of a nuisance.

It may be conceded at the outset that, when a party seeks the aid of a court of equity by injunction, he must show not only clear legal or equitable right, but, also, a well-grounded apprehension of immediate injury to his rights; and that, where no necessity is shown for the injunction as a means of protection to such rights, it should not be granted. But it seems to us that the immediate injury is sufficiently set forth in the complaint under consideration.

The case of *Dana v. Valentine,* 5 Met. (Mass.) 8, cited by respondents, and which it is claimed is exactly in point, seems to us not to reach the case under consideration at all.  There, it is true, the court used the following language, quoted in appellant's brief, viz.:

"Upon no principle of equity can the court interpose in their favor, by injunction on the defendant to desist from carrying on his trade; there being no certainty that dwelling houses will ever be erected on these premises: Or, if there

should be, it is uncertain when such erections may be made. To require this extraordinary relief, the injury complained of must actually exist, or the danger must appear to be certain and immediate, and not depending on any contingency. We think it therefore very manifest, that these owners of vacant lots have made out no title to the interposition of a court of equity."

An examination of that case, however, reveals the fact that that action was brought against the defendant, both by the owners of vacant lots and by the owners of buildings adjacent to the alleged nuisance, which was the business of manufacturing soap and candles, and of slaughtering cattle; and the injunction was denied on two grounds, viz.: first, that the plaintiffs, if they had been injured, had a complete and adequate remedy at law; and second, that the defendant had made out a good prescriptive right and justification. So that, in any event, the complaint of the parties who owned the vacant lots would have failed under the general ruling of the court on the two propositions just above mentioned, and what was said in relation to them was purely without the case. But, in any event, their right to relief was denied specially upon the ground that they had a complete and adequate remedy at law, and that an action at law for the recovery of damages for the diminution of the value of their lands by the nuisance alleged was available to them, there being no certainty that any dwelling houses would ever be erected upon the premises, or, if they should be, when such erections would be made, and that equity would not reach beyond these contingencies to afford relief.

But, as we have before noticed, so far as the certainty of the building is concerned, and also the certainty of the time, the allegation of the complaint, which must be taken to state the truth, is to the effect that the building will be erected at once. And as to the second proposition there decided by the court, that an action for damages was the only resort of the plaintiffs (the owners of vacant lots), that question

was decided adversely to the respondents' contention by this court in *Ingersoll v. Rousseau,* 35 Wash. 92, 76 Pac. 513, where it was held that injunction lies to abate the maintenance of a bawdy house as a public nuisance specially injurious to plaintiff's adjoining property used for residence purposes, the common law remedies of indictment and action on the case being inadequate, and that this rule has not been changed by statute in this state. The above conclusion was reached after a lengthy and evidently painstaking investigation of the law and an investigation of the authorities, ancient and modern, on this subject; and puts at rest the contention made by the respondents that the remedy by injunction was not open to the plaintiff in this case if the petition in other respects stated a cause of action.

The respondents also cite 1 High, Injunctions, § 774, where it is said by that author:

"To justify a court of equity in enjoining a nuisance of the class under consideration, the person aggrieved must show to the court some actual, substantial damage and not merely a remote, contingent, or prospective injury."

But the preceding section discloses the *class* under consideration. The author there was discussing injunctions which were asked for against the operation of legitimate businesses, such as the burning of brick, the erection of a chandlery, or of slaughter houses, or of livery stables, or the operation of lime kilns or gas works—businesses that were in themselves lawful enterprises which the government is anxious to foster under proper regulations and locations. But the nuisance complained of in this case is of an entirely different character. It is degrading, immoral, indecent, and always under the ban of the law, and courts ought not to be too exacting with citizens who are asking relief from such impositions upon their rights. An examination of the other cases cited by respondents shows that they are not applicable to the

9—39 WASH.

facts stated in this complaint, as construed by the decision of this court in *Ingersoll v. Rousseau, supra.*

The judgment will be reversed, with instructions to overrule the demurrer to the complaint.

MOUNT, C. J., ROOT, CROW, HADLEY, FULLERTON, and RUDKIN, JJ., concur.