[No. 6213. Decided July 28, 1906.]

A. B. WOODARD *et al., Appellants,* v. WEST SIDE MILL
COMPANY, *Respondent.*[1]

NUISANCE—INJUNCTION—DAMAGES TO PRIVATE PROPERTY. The op-
eration of a sawmill located in a manufacturing district of a city
and of the value of $150,000, should not be enjoined as a private
nuisance to the plaintiff, the owner of a nearby dwelling of the
value of $2,500, by reason of the deposit of cinders, soot, and ashes,
affecting the plaintiff's comfort and enjoyment of his property, where
it appears that the plaintiff erected the mill, in the first instance,

1Reported in 86 Pac. 579.

sold the same, together with other lands for its enlargement, and petitioned for the vacation of a street upon which to place larger boilers nearer to his dwelling, and where the mill company used the latest appliances and was guilty of no negligence, and made no objection to the payment of damages sustained by plaintiff by reason of the operation of the mill; since plaintiff impliedly licensed the operation, and the right to an injunction against a private nuisance not *malum in se* is not absolute where damages will compensate the plaintiff.

Appeal from a judgment of the superior court for Thurston county, Linn, J., entered November 20, 1905, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, refusing to enjoin the operation of a sawmill as a private nuisance. Affirmed.

*Vance & Mitchell,* for appellants.

*G. C. Israel,* for respondent.

Mount, C. J.—This action was brought by the appellants Woodard and wife, to recover damages to their property caused by cinders, soot, ashes, and smoke falling from the smokestacks of respondent's sawmill upon the dwelling house and premises of appellants; and to enjoin the operation of the sawmill plant. The cause was tried to the court without a jury. Damages in the sum of $490 were awarded to appellants, but the court refused to enjoin the continuance of the alleged nuisance. The plaintiffs, Woodard and wife, appeal from that part of the judgment refusing to grant an injunction.

We find very little dispute upon the facts which are, in substance, as follows: In the year 1879 the plaintiffs built a residence upon a parcel of land owned by them in the vicinity of West Bay avenue and Woodard avenue, within the limits of the city of Olympia. West Bay avenue is a street of said city running in a northerly and southerly direction along the west shore line of Budd's Inlet, a navigable part of Puget Sound. Woodard avenue intersects West Bay avenue at right angles, and extends westerly up a precipitous hill.

The intersection of these avenues is about one and one-half miles from the business center of the city of Olympia. At the time the plaintiffs first went upon the property, the same was in a wild state, covered with timber and brush. Plaintiffs cleared something more than an acre of land at the southwest intersection of Woodard avenue and West Bay avenue, about one hundred and fifty feet west of the tide waters of Budd's Inlet. They constructed a residence thereon and have occupied the same from the year 1879 up to the time this action was commenced. They planted the cleared land to fruit trees, grass, and shrubbery.

In the year 1883 the plaintiff A. B. Woodard, in company with others, constructed a steam sawmill on the shores of Budd's Inlet, diagonally across Woodard avenue from plaintiff's dwelling. The daily capacity of this mill was about 20,000 feet of lumber per day of ten hours. At the time the mill was constructed it had but one smokestack. Soon thereafter another smokestack was added. The mill was operated by the company which built it until the year 1886, when the plaintiff's interest was sold, and subsequently, in 1891, passed into the hands of the defendant company. In 1891 the plaintiffs sold to the defendant six acres of tide and shore land lying to the north and east and adjoining plaintiffs' premises. In the same year they also sold to defendant a small tract of land containing running fresh water, necessary for the defendant's mills. These tracts of land were purchased for the purpose of increasing the size and output of the mill plant. Plaintiffs knew the purposes for which the lands were being purchased. Thereafter, in 1894, another smokestack was added, and the capacity of the mill was increased to thirty-five or forty thousand feet of lumber per day of ten hours. In the year 1903 the capacity of the mill was again increased, to one hundred thousand feet of lumber per day of ten hours.

In February of the last named year, the plaintiff A. B. Woodard and defendant and others petitioned the city coun-

cil of Olympia to vacate the north twenty feet of Woodard avenue for the purpose of establishing the power plant of defendant's mill thereon, and subsequently, in April of that year, the city vacated the portion of the street named. Thereupon the defendant erected a power plant on its own land, to the west side of West Bay avenue, occupying the portion of the street vacated. This new power plant consists of five boilers and five smokestacks, and is located about one hundred and sixty feet to the north of plaintiffs' dwelling, the portion of Woodard avenue which was not vacated being between the plaintiffs' land and the new power plant. When this new power plant was completed the old one was abandoned. The new plant is about fifty feet nearer to plaintiffs' residence than the old plant. The smokestacks are about eighty feet high and extend from twenty-three to thirty feet above the top of plaintiffs' dwelling. The tops of the stacks are provided with the most approved appliances for arresting soot, cinders, and ashes, and for consuming smoke.

The lands upon which the defendant's mills, docks and wharves are located are tide and shore lands, fit only for manufacturing purposes, and they have been used as such since the construction of the mill in the year 1883. The mill is located very near the northern boundary of the city of Olympia and within a manufacturing district, the shore line and tide lands for a long distance toward the business center of the city being occupied by this and other manufacturing plants. The lands on the west side of West Bay avenue opposite the bay rise precipitously from the waters of the sound. Several residences have been constructed on the sidehill since plaintiffs' residence was constructed, but plaintiffs' residence is the nearest one to the said mills. Sawdust has been used for fuel ever since the plaintiffs' mill was constructed. Smoke, soot, and cinders have fallen on plaintiffs' property when the winds blow from the northeast, from the time of the construction of the mill.

After the construction of the new power house in 1903,

soot, cinders, and ashes have fallen upon plaintiffs' premises in greater quantities than previously when the winds were blowing from the northeast. The prevailing winds are from the southwest and only northeast winds carry soot, cinders, or ashes in the direction of plaintiffs' premises. When such winds blow—which is frequently during the summer months —the smoke from the stacks is carried over the plaintiffs' dwelling, and cinders, soot, and ashes are deposited upon the walks, porches and roof of plaintiffs' dwelling, rendering the same less inviting and less comfortable. Such soot, etc., also soils the carpets within the house and fruit and flowers growing in the yard. Plaintiffs have frequently complained to defendant, both before and after the erection of the new power house, about the effect of the cinders, soot, and ashes upon their premises. The value of plaintiffs' property at the time the action was begun was $2,500. The value of defendant's property was $150,000. It employed eighty men, and the annual output of the mills was $350,000. If the defendant's mill cannot be operated as it is now constructed, it must remain idle or be removed to some other place.

Several assignments of error are made by appellants upon the findings of fact made by the trial court. We have not included some of them in the statement above, because we deem them immaterial to a decision of the main question. Others excepted to are stated because they are proper to be considered, especially the fact that the mill is located in a manufacturing district. The lower court found that plaintiffs have been damaged in the sum of $490, and adjudged that they recover that amount from the defendant. They do not appeal from that award, and respondent does not now contest the correctness of the judgment entered. The main question and the one upon which the appeal must be decided is, did the court commit error in refusing to restrain the operation of the power plant as now constructed?

There is no dispute that the mill plant of respondent is located wholly upon its own lands, and there is no dispute

that the smoke from the respondent's power plant blows over the premises of the appellants at certain seasons of the year when the wind is from the northeast, and that at such times cinders, soot, and ashes, sometimes smoke and steam, fall upon appellants' premises to such an extent as to constitute a private nuisance and an injury to appellants. But it is also undisputed that the mill was first constructed by the appellants; that all the lands now occupied by the respondent were purchased directly or indirectly from the appellants, and that appellants knew the purposes for which the lands were being purchased by the respondent. It is apparently conceded that the mill plant cannot be operated so as to utilize the premises purchased from the appellants for that purpose without the maintenance of the power house as it is now located. It is true, appellants resist the fact that the mill plant is located in a manufacturing district, but all the evidence in the case shows that it is so located, and all the surroundings, with the single exception of appellants' dwelling, are those of a district for the manufacture of lumber in its various forms, and the shipment thereof by rail and water, which conditions have continued from 1883 down to the present time. The business of manufacturing lumber is not unlawful, and is not a nuisance *per se*; but it is one of the common industries of this state, upon which much of the material prosperity of the citizens depends, and is necessary to the development of communities. Like other industries, it must be carried on at proper places and in a proper manner, suitable to its location. Wood, Nuisances, §§ 529, 530.

It is the rule that one must so use his own property as not to injuriously affect adjoining property or the comfortable use thereof by his neighbor. But this rule is not absolute. It is subject to reasonable limitations, which depend upon the surroundings of the property and the rights of others. Judge Cooley, in *Gilbert v. Showerman,* 23 Mich. 447, states the limitation as follows:

"One man's comfort and enjoyment with reference to his ownership of a parcel of land cannot be considered by itself distinct from the desires and interests of his neighbors, as otherwise the wishes of one might control a whole community, and the person most ready to complain might regulate to suit himself, the business that should be carried on in his neighborhood. . . . The true principle has been said by an eminent jurist to be one 'growing out of the nature of well ordered civilized society, that every holder of the property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property is held subject to those general regulations which are necessary to the common good and general welfare.' "

But, however absolute is the right to the comfortable enjoyment of property, such right may be waived or lost by laches or acquiescence, by one person inviting another to erect a nuisance near his premises, and thereby he may deprive himself of an equitable remedy against such nuisance. Wood, Nuisances, §§ 804-806; *Goodall v. Crofton,* 33 Ohio St. 271, 276; *Louisville etc. R. Co. v. Daugherty,* 18 Ky. Law 273, 36 S. W. 5.

The location of the manufacturing plant and the facts tending to show an estoppel or acquiescence are proper to be considered upon the application for injunctive relief, as said in *Owen v. Phillips,* 73 Ind. 284:

"It is important to keep in mind the fact that the business of milling does not belong to that class which constitute nuisances *per se.* It is also important to sharply mark the distinction between suits for injunction and actions for damages. In the latter class, the remedy is an ordinary one; in the former, the extraordinary powers of the court are invoked. It is not every injury which will support an action for damages that will entitle the complainant to relief by injunction. . . . There are solid reasons supporting this rule. A lawful business may be so conducted as to become a nuisance, but, in order to warrant interference by injunc-

tion, the injury must be a material and essential one. Damages may be paid by the author of the nuisance and the business not be stopped, but if injunction issues, then the right to conduct the business is at an end. The necessity which will authorize the granting of the writ of injunction, to restrain the carrying on of a business lawful in itself, must be a strong and imperious one. If it were otherwise, all mills and manufactories might be stopped at the demand of those to whom they caused annoyance, even though the injury complained of might be slight and trivial."

To the same effect, see: *Gilbert v. Showerman, supra; Doellner v. Tynan,* 38 How. Pr. 176; *Huckenstine's Appeal,* 70 Pa. St. 102; *Richard's Appeal,* 57 Pa. St. 105, 98 Am. Dec. 202. In the last named case it is said, at page 113:

"It seems to be supposed that, as at law, whenever a case is made out of wrongful acts on the one side and consequent injury on the other, a decree to restrain the act complained of, must as certainly follow as a judgment would follow a verdict in a common-law court. This is a mistake. It is elementary law, that in equity a decree is never of right, as a judgment at law is, but of grace. Hence the chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing and leaving the party to his redress at the hands of a court and jury. If in conscience the former should appear, he will refuse to enjoin."

The rules thus stated are applicable to the facts in this case. The appellant A. B. Woodard himself initiated the industry now complained of. He selected the site for the mill in what was then a wild and undeveloped locality, far removed from the residence or business sections of the city, and which from that time on grew into a manufacturing district. He selected the site close to his residence. The mill was then a small one compared with its present capacity, and the nuisance was then of little or no consequence. When he parted with his interest in the mill and retained his residence, he thereby necessarily gave implied license to his grantees and their successors to continue the operation of the mill with such inconvenience to him and his family as had theretofore

existed, and which should reasonably be expected from necessary improvements in the future. · When he subsequently sold other lands adjoining his premises, knowing the same to be purchased by the respondent for increasing the capacity of the plant, he thereby likewise granted to the purchasers permission to make such reasonable use of the premises purchased as was necessary to make the contemplated improvements and to operate such mills and machinery in the usual and ordinary way, and with such increased inconvenience to the use of his residence as might reasonably be anticipated. To hold otherwise would be to say that the appellants might sell property to respondent for a given purpose and permit respondent to make large improvements and expenditures of money thereon, and thereupon prevent the use of the property by respondent at all, by writ of injunction. Such, of course, is not the result of equitable rules. The appellants, under the circumstances shown in this case, are clearly not entitled to enjoin the use of the power plant, even though its construction or use by the respondent causes an increased burden upon appellants' adjoining property.

It is claimed by the appellants that they did not know that the new power plant would increase the amount of soot, cinders, and ashes upon their premises; that they supposed the injury would be lessened by means of new and improved appliances. But this could not be the basis for injunction which would ruin the respondent's business. Under such circumstances they would be entitled to recover such damages as would arise by reason of the unskillful and negligent construction or operation of the plant, but would not be permitted to enjoin the operation thereof. The facts in this case take it without the rule in that class of cases where the occupations were *malum in se,* or public nuisances specially injurious to certain persons, as were the cases of *Ingersoll v. Rousseau,* 35 Wash. 92, 76 Pac. 513; *Wilcox v. Henry,* 35 Wash. 591, 77 Pac. 1055; and *Dempsie v. Darling,* 39 Wash. 125, 81 Pac. 152; and, also, without the rule in those cases where

the nuisance was maintained in a location given over to residences, churches and other like places, and where inconveniences were not to be borne in deference to practical exigencies.

The trial court in this case properly denied the injunction. The judgment is therefore affirmed.

DUNBAR, CROW, HADLEY, FULLERTON, and RUDKIN, JJ., concur.