[No. 18560.    Department Two.    December 5, 1924.]

JOHN P. JONES COMPANY, INCORPORATED, *Appellant*, v.
SEATTLE UNION RECORD PUBLISHING COMPANY,
*Respondent*.[1]

EQUITY (74)—PARTY WALLS (2)—RIGHTS AND LIABILITIES—RE-
LIEF—NATURE AND EXTENT. Where an adjoining owner has invaded
and is invading the rights of his neighbor by cutting and main-
taining openings in a party wall, owned in moieties by the parties,
he cannot resist equitable relief against the trespass by showing
that the openings are necessary for the use of his building, and
are no detriment or injury to the other party until such time as
he makes use of his part of the wall.

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered November 7, 1923,
denying equitable relief against the maintenance of
openings in a party wall, after a trial on the merits
to the court. Reversed.

*Riddell & Brackett*, for appellant.

*G. F. Vanderveer*, for respondent.

FULLERTON, J.—The appellant, John P. Jones Co., a
corporation, is the owner of lot 10, in Block 37, of
A. A. Denny's Sixth Addition to the city of Seattle.
The respondent, Seattle Union Record Publishing
Company, also a corporation, is the owner of lot 7, in
the same block. The lots abut against each other. In
the year 1909, the predecessor in interest of the re-
spondent, desiring to erect a building on his own lot,
entered into an agreement with the then owner of the
appellant's lot for the erection of a party wall of cer-
tain defined dimensions centering on the dividing line
between the lots. The wall was erected in accordance
with the agreement, and formed the southerly side of
the building erected at the same time on what is now

[1]Reported in 230 Pac. 835.

the respondent's property. The wall, by the terms of the agreement, was to be a wall without openings of any kind. Subsequently, however, during the construction of the wall, two window openings were inserted in the wall near its rear end in the third story of the building mentioned. These, it appears, were inserted by mutual agreement between the owners of the property; the party for whose benefit they were constructed agreeing to close them whenever the other party to the agreement desired to make use of the wall.

Sometime later, the predecessor in title of the appellant erected a building on his own lot, making use of the wall mentioned as one of the walls thereof. The building, however, did not extend back the full length of the wall. Its extreme length is but some two-thirds of the distance, and on the side next to the wall, in the rear of the building, an opening was left for a light court extending upwards from the top of the first floor to the top of the building. This court is twenty feet in width and thirty feet in length, and is open at its back end. The building did not extend back to the windows before mentioned, and no demand was then made that they be closed.

The respondent acquired its interest in January 1921. It deraigns its title through a foreclosure of a mortgage, which mortgage antedated the party wall agreement. As the foreclosure proceedings are not questioned, and must be presumed to be regular, the effect of the foreclosure was to cut off any interest the appellant acquired in the wall as a whole in virtue of the agreement. The parties now own the wall in moieties, each owning that portion resting upon its own property.

Soon after the respondent purchased the property, it remodeled the building and installed therein the accessories necessary to the publication of a modern

daily paper. In its work, it cut three windows through the wall into the light court before mentioned, two on the second floor of its building and one on the third. It did this without the consent of the appellant, although no protest or objection to its so doing was made, other than a protest as to the manner in which the work was conducted. Some two years later, the respondent started to cut through the wall on the third floor for a fourth window. In so doing, the workman broke through the wall to the front of the light court into a room of the appellant's building. Complaint was made of this, when the break was immediately repaired and the window completed so as to make it open into the light court. To the opening of this window, the appellant did object and protest, making a demand upon the respondent to close it, and to close also the other openings it had made through the wall. The respondent refused to comply with the demand, and resisted the attempt of the appellant to close them. The present suit was thereupon begun to enjoin the appellant from maintaining the windows, and to enjoin it from interfering with the efforts of the appellant to close them. In a second cause of action, the appellant sought the right to close the windows inserted at the time of the erection of the wall, pleading a revocation of the consent given for their insertion. The trial court, after a hearing upon the merits, refused to grant the relief demanded, and entered a decree to the effect that the windows be left in their present condition until such time as the appellant made such use of the wall as to necessitate their closing. The appeal is from this decree.

The respondent did not, in the court below, and does not in this court, claim any title or interest in that part of the wall which stands upon the appellant's property, nor does it contend that it has any legal right to main-

tain the windows. Indeed, its learned counsel uses this language in its brief:

"The respondent does not claim any right in the appellant's wall, nor any legal right to maintain the windows in question. In fact, as recited in the decree, it filed with the clerk of the Court a formal instrument under seal renouncing any such right and agreeing to close any or all of the windows in question whenever the appellant should decide to use the part of the wall in which they are installed."

And further on:

"If the respondent's right to prevail in this suit is dependent upon any question of title or technical legal right, we frankly confess now the cause must be reversed for we neither have nor claim to have any such right."

The respondent's position is, however, that the equities of the situation do not warrant the granting of the relief demanded. The evidence tended to show that the windows in no way weakened or otherwise affected the stability of the wall, and that the appellant suffered no actual pecuniary loss by their maintenance. On the other side, there is evidence that the windows were of great benefit to the respondent. The windows originally constructed in the wall furnish light and ventilation to its composing rooms. One of those later installed furnishes light and ventilation to its telegraphic and editorial rooms. The others furnish light and ventilation for rooms in use by tenants of the building. It was in evidence that the closing of the windows would seriously hamper the respondent in the publication of its paper, and it is inferable also from the facts shown that, to close the windows, would require extensive and expensive alterations in the building to supply from other sources the needed light and ventilation.

There was no wilful trespass, or intent to trespass, on the appellant's property by the respondent when it ordered the installation of the windows. The installation was done under the direction of the manager of the respondent, and that officer testified that it was his understanding that the wall was entirely on the respondent's property, and that he was not informed that a contrary claim was made until some months after the installation of the last of the windows. Nor was the respondent guilty of any wilful misconduct when it resisted the appellant's efforts to close the windows. It merely insisted that the windows remain as they then were until a court adjudication could be had on the respective rights of the parties.

Since the respondent has no legal right to maintain the windows, it remains to inquire whether there are equitable considerations which justify the decree of the trial court. It is the rule in some jurisdictions, notably in Pennsylvania (*Sullivan v. Jones & Laughlin Steel Co.*, 208 Pa. St. 540, 57 Atl. 1065), that there can be no balancing of conveniences or equities when the invasion of a property right is involved.

There are jurisdictions, however, which maintain a contrary principle, and this court has aligned itself with them. In *Woodard v. West Side Mill Co.*, 43 Wash. 308, 86 Pac. 579, the plaintiff sought to enjoin the operation of a sawmill because its operation caused cinders, ashes, soot and smoke to fall upon the dwelling house of the respondent, rendering the property undesirable as a residence. The relief demanded was denied; the court saying, in substance, that it was a mistake to suppose that, whenever a case is made out of wrongful act on the one side and consequent injury on the other, a decree to restrain the act must follow as certainly as a judgment follows a verdict in a common law court; that, in equity, a decree is never of

right, as a judgment at law is, but is rather a matter of grace; and that the court will always consider whether it would do a greater injury by enjoining the wrongful act than it would by refusing to enjoin it and leaving the complaining party to his redress at law. But the case is pertinent here only because of the principle it announces. Its facts differ so widely from the facts of the instant case that no parallel can be drawn between them, and what might be the proper judgment in the one case furnishes no criterion by which to determine what might be the proper judgment in the other.

The present case must be measured by its individual facts, and we cannot think these justify the somewhat indefinite decree entered by the trial court. The respondent has invaded, and is now invading, the property rights of the appellant. Ultimately it must cease from so doing, and we cannot think that the time it is required so to do ought to be made to depend on the time the appellant elects to make such use of the wall as will necessitate the closing of the windows. But we further think that the equities of the situation do not require an order requiring that the windows be immediately closed; that the loss caused to the respondent by such an order would so far outweigh the inconvenience the windows cause the appellant, that the former should be given a reasonable time within which to so remodel its own building as to make it conform to its requirements without the necessity of the windows. What would be a reasonable time, the record does not furnish any very certain guide. But if we may bring in aid of the record our general knowledge upon such matters, ten months from the time the remittitur goes down on this appeal, we think, would not be unreasonable. This, however, must be subject to the condition that, if the appellant in the meantime so

far remodels or extends its own building as to necessitate the closing of the windows, they shall be closed when the necessity arises.

The decree of the superior court is reversed and the cause is remanded with instructions to enter a decree in conformity with this opinion. Since costs were not allowed to either party in the trial court, costs will not be allowed to either party on the appeal.

MAIN, C. J., BRIDGES, PEMBERTON, and MITCHELL, JJ., concur.